[No. 25337-6-III.   Division Three.   October 23, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRANCE M. LARAMIE, *Appellant*.

*Terrance M. Laramie*, pro se.
*Dennis W. Morgan*, for appellant.
*Michael G. Sandona, Prosecuting Attorney*, for respondent.

¶1 STEPHENS, J.— Terrance M. Laramie appeals his convictions for second degree assault, unlawful imprisonment, interfering with the reporting of domestic violence, and third degree rape. He contends the information did not include all essential elements of interfering with the reporting of domestic violence; the court erred in permitting amendment of the information and instructing the jury on an uncharged alternative means of second degree assault; and the prosecutor committed misconduct. In a pro se

statement of additional grounds for review, Mr. Laramie also raises issues concerning the victim's testimony and his ability to testify. We reverse his conviction for second degree assault and affirm his other convictions.

## FACTS

¶2 Mr. Laramie and Denise Rickard began an affair in July 2005. Ms. Rickard left her husband and moved in with Mr. Laramie.

¶3 On or about October 13, 2005, Mr. Laramie drove Ms. Rickard to the woods and beat her. As they drove to the woods, Mr. Laramie told her "we're going in and only one of us [is] coming out." Report of Proceedings (RP) at 217. Mr. Laramie hit Ms. Rickard and kicked her. She told him she wanted to go home and he told her to walk. As she started, he followed her in the truck and she believed he was going to run over her. He threw her into the truck and took her back to their residence. She tried to call 911 but he grabbed the phone from her and told her if she turned him in, he would get her when he got out. When they returned to their apartment, he injected her with methamphetamine and anally raped her.

¶4 When Mr. Laramie went to work, Ms. Rickard left the apartment and returned to her husband in Omak. On October 20, she contacted the police. Officers photographed her injuries and took her statement. Later that day, the police arrested Mr. Laramie.

¶5 The State charged Mr. Laramie with second degree assault, third degree malicious mischief, first degree kidnapping, interfering with the reporting of domestic violence, and fourth degree assault. The State amended the information to add a charge of third degree rape and three counts of delivery of a controlled substance. The State filed a second, third, and fourth amended information. The fourth amended information charged Mr. Laramie with second degree assault, third degree malicious mischief, first degree kidnapping, interfering with the reporting of domes-

tic violence, fourth degree assault, delivery of metham-
phetamine, and third degree rape. The jury convicted Mr.
Laramie of second degree assault, unlawful imprisonment
(a lesser included offense of first degree kidnapping), inter-
fering with the reporting of domestic violence, and third
degree rape. The court imposed a standard range sentence
of 84 months. Mr. Laramie appeals.

## ANALYSIS

### A. Validity of the Information

¶6 Count IV of the information charged Mr. Laramie
with interfering with the reporting of domestic violence.
The State amended the information four times, but the
language of this count was never challenged or changed.
The pertinent language provided:

> That the defendant, TERRANCE M. LARAMIE, on or about
> the 12th day to and including the 20th day of October 2005, in
> the County of Ferry, State of Washington, did commit a crime of
> domestic violence as defined in RCW 10.99.020 and did prevent
> or attempt to prevent the victim of or a witness to that domestic
> violence crime from calling a 911 emergency communication
> system, obtaining medical assistance, or making a report to
> any law enforcement official; to wit: confined and prevented the
> victim from leaving his apartment so that she wouldn't be able
> to contact the police to make a report and/or seek medical at-
> tention; contrary to Revised Code of Washington 9A.36.150(1).

Clerk's Papers (CP) at 60. Mr. Laramie now claims that this
language did not contain all essential elements of the
charge because it did not specify the victim or the underly-
ing domestic violence crime.

¶7 Although a defendant may challenge the suffi-
ciency of the information for the first time on appeal, we
liberally construe the document in favor of its validity.
*State v. Kjorsvik*, 117 Wn.2d 93, 105-06, 812 P.2d 86 (1991).
We consider (1) whether the necessary facts appear in any

form, or by fair construction can be found, in the charging document; and, if so, (2) whether the defendant nonetheless suffered actual prejudice as a result of the inartful, vague, or ambiguous charging language. *Id.*; *see also State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). Such liberal construction prevents what has been described as " 'sandbagging,' " insofar as it removes any incentive to refrain from challenging a defective information before or during trial, when a successful objection would result in only an amendment to the information. *Kjorsvik*, 117 Wn.2d at 103 (quoting 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 & n.36 (1984)). Moreover, it reinforces the "primary goal" of the essential elements rule, which is to provide constitutionally man-dated notice to the defendant of the charges against which he or she must be prepared to defend. *Id.* at 101; *State v. Davis*, 119 Wn.2d 657, 661, 835 P.2d 1039 (1992). The goal of notice is met where a fair, commonsense construction of the charging document "would reasonably apprise an ac-cused of the elements of the crime charged." *Kjorsvik*, 117 Wn.2d at 109.

¶8 Here, count IV of the information followed the lan-guage of the statute defining the crime of interfering with the reporting of domestic violence. RCW 9A.36.150(1). It included the essential element of the commission of an underlying crime of domestic violence as defined in RCW 10.99.020 and specified the means of interference, viz., that Mr. Laramie confined and prevented the victim from mak-ing a report or seeking medical attention. Mr. Laramie argues that the information lacked essential elements, however, because it did not specify the name of the victim and the nature of the underlying domestic violence crime. His argument finds support in *State v. Clowes*, 104 Wn. App. 935, 942, 18 P.3d 596 (2001).

¶9 In *Clowes*, Division Two of this court held that an information that does not include these details is deficient, and such details cannot be drawn from other parts of a multiple-count information. 104 Wn. App. at 942 (noting,

"we view count II in isolation"). The court relied on its earlier decision in *State v. Gill*, 103 Wn. App. 435, 13 P.3d 646 (2000), which concluded, without citation, that the liberal construction rule of *Kjorsvik* "provides no basis for the proposition that elements can be plucked out of one count in a charging document and dropped into another." *Gill*, 103 Wn. App. at 442. The result in *Clowes* was that the court found the charge of interfering with the reporting of domestic violence fatally flawed, notwithstanding that the identity of the victim and the nature of the domestic violence incident were set forth in another count of the indictment. *Clowes*, 104 Wn. App. at 942.

¶10 We cannot agree with the reasoning in *Clowes*. We find nothing in *Kjorsvik* to suggest that in giving a liberal construction to an information, a reviewing court must limit its inquiry to the specific count at issue. Though *Kjorsvik* involved a single-count information, the court emphasized that "[w]ords in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." *Kjorsvik*, 117 Wn.2d at 109 (citing *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982)). The court subsequently applied the liberal construction rule in the context of multiple-count indictments, without any suggestion that its review of the *charging document as a whole* was limited to the count at issue. *See Davis*, 119 Wn.2d at 661-64; *State v. Hopper*, 118 Wn.2d 151, 156-57, 822 P.2d 775 (1992).

¶11 Moreover, reading each count in isolation seems particularly artificial when, as here, the alleged deficiency in the charge concerns supporting facts rather than legal elements of the charge. *See State v. Winings*, 126 Wn. App. 75, 85, 107 P.3d 141 (2005) (distinguishing between deficient and merely vague charges, and noting the information need not describe facts with great specificity).[1] It is one

---

[1] *Winings*, a Division Two Court of Appeals decision, distinguished *Clowes* on the ground that by not identifying the domestic violence victim, the information there failed to allege an essential element—that the victim was a family or household member. *Winings*, 126 Wn. App. at 85 n.3. While this distinction

thing to pluck elements such as intent or knowledge from unrelated counts, but when multiple counts arise out of the same or related facts, a commonsense construction should prevail. *Kjorsvik*, 117 Wn.2d at 108-09. The failure to allege specific facts in an information may render the charging document vague, but it is not constitutionally defective. *State v. Leach*, 113 Wn.2d 679, 686-87, 782 P.2d 552 (1989). The remedy in such instances is to demand a bill of particulars at trial; if this is not done, a challenge to vague, inartful, or imprecise language will not be entertained on appeal. *Id.* at 687.

¶12 Count IV of the information against Mr. Laramie included all essential statutory elements of interfering with the reporting of domestic violence, with specific reference to both the domestic violence and the interference statutes. Charging in statutory language is generally sufficient if the relevant statute defines the crime so as "to apprise an accused person with reasonable certainty of the nature of the accusation." *Leach*, 113 Wn.2d at 686. The supporting facts that are not specified in count IV may be fairly inferred from other language within the charging document, giving the information a liberal, sensible construction as required under *Kjorsvik*. The identity of Ms. Rickard as the victim is unambiguous, and the assaults on Ms. Rickard are sufficiently described. Accordingly, we conclude that the information here, while not a model of clarity, satisfies the first prong of the *Kjorsvik* analysis. Mr. Laramie makes no attempt to argue prejudice under the second prong, relying solely on *Clowes*. Accordingly, we reject his challenge to the sufficiency of the information.[2]

matters under *Clowes*'s holding that each count must be read in isolation, had the charging document been read as a whole, the identity of the victim was easily determined. It may be that the information in *Clowes* suffered from the additional problem that it did not define domestic violence to involve a family or household member, by reference to RCW 10.99.020 or otherwise. In contrast, count IV against Mr. Laramie referenced an underlying domestic violence crime "as defined in RCW 10.99.020." CP at 60.

[2] While we take this opportunity to depart from what we perceive to be *Clowes*'s over-technical application of the essential elements rule, prosecutors are presumed to be aware of case law affecting charging requirements. *See City of Auburn*

B. ALTERNATIVE MEANS

¶13 The State charged Mr. Laramie with second degree assault. The fourth amended information provided:

That the defendant, TERRANCE M. LARAMIE, on or about the 12th to the 13th day of October 2005, in the County of Ferry, State of Washington, did intentionally assault another person, to wit: Denise Marie Rickard; with a deadly weapon, a motor vehicle; contrary to Revised Code of Washington 9A.36.021(1)(a).

CP at 58. When it instructed the jury on second degree assault, the court gave an instruction that included an alternative means of committing second degree assault based upon "recklessly inflict[ing] substantial bodily harm." CP at 134. The court also gave a "to convict" instruction providing that one of the elements the jury needed to find was that Mr. Laramie had "intentionally assaulted Denise Marie Rickard and thereby recklessly inflicted substantial bodily harm; or . . . assaulted Denise Marie Rickard with a deadly weapon." CP at 135. Further, the court gave definitional instructions for "reckless" and "substantial bodily harm." CP at 138, 140. Mr. Laramie did not take exception to these instructions.

¶14 After the instructions were read, the State advised the court of the discrepancy between the charging language and the instructions relating to second degree assault. The State asked the court to reinstruct the jury and delete the references to recklessly inflicting substantial bodily harm or, in the alternative, to allow an amendment of the information to conform to the proof. The State argued there was substantial evidence in the record to sustain a conviction of second degree assault based on the reckless infliction of substantial bodily harm. Defense counsel objected and requested a mistrial and dismissal of all charges. The court

_v. Brooke_, 119 Wn.2d 623, 638-39, 836 P.2d 212 (1992). _Clowes_ was decided in 2001. The charges here were filed in 2005. It is bewildering that count IV did not conform to _Clowes_'s requirements for charging language for this exact offense, particularly after the State otherwise amended the information three times.

did not reinstruct the jury but granted the motion to amend the information to conform to the proof.

¶15 Mr. Laramie argues that allowing the jury to consider the uncharged alternative means violated his rights under the Sixth Amendment to the United States Constitution, and article I, section 22 of the Washington State Constitution, and that the belated amendment of the information also violated CrR 2.1(d). The State notes that Mr. Laramie did not object to the jury instructions at the time they were given and also argues that he invited any error by refusing to consent to reinstructing the jury.

¶16 We conclude that Mr. Laramie may raise this issue on appeal and did not invite error. While he did not object to the jury instructions at the time they were given, he objected to allowing the jury to deliberate given the discrepancy between the charging document and the instructions, and sought a mistrial. This was sufficient to preserve the issue, which is, moreover, one of manifest error affecting a constitutional right. *See State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003). Refusing to consent to reinstructing the jury did not invite error. Mr. Laramie did not propose the instructions, nor the "remedy" of amending the information to conform. *Cf. State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999) (finding invited error where defendant proposed improper jury instruction).

¶17 The trial court erred in instructing the jury that it could convict Mr. Laramie of second degree assault by the uncharged alternative means of recklessly inflicting substantial bodily harm. When an information charges one of several alternative means, "it is error to instruct the jury that they may consider other ways or means by which the crime could have been committed." *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). The manner of committing an offense is an element, and the defendant must be informed of this element in the information. *Id.* Where the instructional error favors the prevailing party, it "is presumed [to be] prejudicial unless it affirmatively appears . . .

the error was harmless." *Id.* at 34-35; *Chino,* 117 Wn. App. at 540.

¶18 The State argues Mr. Laramie suffered no prejudice because he knew prior to trial that the evidence supported the alternative means. But this does not answer the problem that the jury was instructed on an uncharged alternative means, despite Mr. Laramie's constitutional right to be informed of the nature of the charges against him. U.S. CONST. amend. VI; WASH. CONST., art. I, § 22; *see State v. Pelkey,* 109 Wn.2d 484, 490-91, 745 P.2d 854 (1987). The error was necessarily prejudicial because, under the instructions given, the jury could have convicted Mr. Laramie of second degree assault based on either the charged or the uncharged alternative means. *See State v. Severns,* 13 Wn.2d 542, 548-49, 552, 125 P.2d 659 (1942).

¶19 The State maintains that any instructional error was obviated when the court granted its motion to conform the information to the evidence. Br. of Resp't at 18 (noting, "there no longer existed a variance between the information and the jury instructions because the [information] was amended to conform to the proof"). To the contrary, allowing the amendment was also error. CrR 2.1(d) provides that a court may allow amendment of the information at any time before the verdict only "if substantial rights of the defendant are not prejudiced."[3] Under this rule, "[a] criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense." *Pelkey,* 109 Wn.2d at 491. As the court observed in *Pelkey,* "[a]nything else is a violation of the defendant's article 1, section 22 right to demand the nature and cause of the accusation against him or her." *Id.*

¶20 Here, the State sought to amend the information to instruct the alternative means of second degree assault, not

---

[3] The State relies on several cases allowing an amendment to conform to evidence regarding uncharged means, but these cases were all decided prior to the adoption of CrR 2.1. CrR 2.1(d) and the cases interpreting it control our resolution of this issue.

a lesser included offense. *See State v. Griffith*, 129 Wn. App. 482, 490-91, 120 P.3d 610 (2005) (holding that alternative means of committing a crime is not a lesser included offense), *review denied*, 156 Wn.2d 1037 (2006). Because this posttrial amendment contravened Mr. Laramie's right to be informed of the charges against him, it is "reversible error per se even without a defense showing of prejudice." *State v. Markle*, 118 Wn.2d 424, 437, 823 P.2d 1101 (1992).

¶21 We hold the amendment was improper and reverse Mr. Laramie's conviction for second degree assault. However, we reject Mr. Laramie's argument that the appropriate remedy is to dismiss the charge of second degree assault with prejudice. Mr. Laramie relies on *State v. Dallas*, but that case involved a conviction based solely on a substitute charge allowed after the close of the State's case; the original charge was deleted from the amended information. *State v. Dallas*, 126 Wn.2d 324, 327, 892 P.2d 1082 (1995). As the cases discussed in *Dallas* suggest, while violation of the mandatory joinder rule requires dismissal with prejudice of a charge based on an alternative means that was not joined in the information, it does not follow that the State cannot refile the original charge by the original means alleged. *See State v. Anderson*, 96 Wn.2d 739, 743, 638 P.2d 1205, *cert. denied*, 459 U.S. 842 (1982); *Dallas*, 126 Wn.2d at 328-29. Understanding the rule as one based on issue preclusion, the State is not prohibited from refiling a charge of second degree assault by means of a deadly weapon; it is precluded from recharging the alternative means based on reckless infliction of substantial bodily harm. *See Dallas*, 126 Wn.2d at 329; *cf. State v. Russell*, 101 Wn.2d 349, 354, 678 P.2d 332 (1984) (holding inclusion of alternative felony murder charge violated mandatory joinder rule and remanding for new trial on original charge of intentional second degree murder).

C. Prosecutorial Misconduct

¶22 Mr. Laramie seeks reversal of his convictions on all charges based on alleged misconduct by the prosecutor

during closing argument. During rebuttal argument the prosecutor stated:

> Now, more important is this totality of the circumstance arguments, and this goes to the concept of reasonable doubt. And we've heard that the totality of circumstances has nothing to do with it. It is a concept that's totally foreign to that. Look again at Instruction 7. It says a reasonable doubt is one for which a reason exists, and may arise from the evidence or lack of evidence. It is such doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all the evidence or lack of evidence.
>
> Now, it may just be a matter of semantics as to whether totality of circumstances is included in that instruction to you on the law, but it certainly encompasses the totality of the circumstances as related from that witness chair, contrary to any assertions by the defense to the contrary.
>
> And the last portion of that instruction is important, because after considering—after such consideration, and again, that's after fully, fairly and carefully considering all of the evidence or lack of it, you have an abiding belief in the truth of the charge, you are satisfied by a reason—beyond a reasonable doubt. That's what's [sic] you need to keep in mind.

RP at 390-91. Mr. Laramie contends this argument suggested to the jury a "totality of the circumstances" test that would relieve the State of its constitutional burden to prove guilt beyond a reasonable doubt.

¶23 Mr. Laramie bears the burden of showing the prosecutor's argument was both improper and prejudicial in the context of the entire record and circumstances at trial. *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003), *review denied*, 151 Wn.2d 1039 (2004). In closing argument, the court allows counsel wide latitude to explain and express reasonable inferences from the evidence. *Id.*

¶24 Mr. Laramie cannot meet his burden. The prosecutor's argument referred to instruction 7, the definition of reasonable doubt. That instruction made clear the State's burden, and the prosecutor's argument referred to that burden, asking the jury to look at "all of the circum-

stances, all of the testimony and the exhibits . . . to consider it all." RP at 394. While the phrase "totality of the circumstances" may be used in various ways, in the context used here it was not an improper attempt to undercut the State's constitutional burden of proof. Mr. Laramie has also failed to show prejudice. The jury had the instructions on reasonable doubt, which did not contain the phrase "totality of the circumstances." The jury is presumed to follow the court's instructions. *State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007). We find no reversible error.

## CONCLUSION

¶25 We hold that the information sufficiently conveyed all essential elements of the charge of interfering with the reporting of domestic violence and affirm Mr. Laramie's conviction for this offense. Finding no reversible error, we also affirm Mr. Laramie's convictions for unlawful imprisonment and third degree rape. We reverse his conviction for second degree assault because his constitutional rights were violated when the jury was instructed on an uncharged alternative means and the information was amended posttrial to conform. While the State may retry Mr. Laramie for second degree assault, it may only do so based on the charged means: use of a deadly weapon.

¶26 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SCHULTHEIS, A.C.J., and KULIK, J., concur.