FILED
COURT OF APPEALS
DIVISION II

2015 JUN 23 AM 8: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45103-4-II |
| Respondent, | |
| v. | |
| ANTHONY TYRONE CLARK, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Anthony Clark appeals his conviction of first degree murder, first degree robbery, unlawful possession of a controlled substance with intent to deliver, and second degree unlawful possession of a firearm. Clark argues that (1) the trial court erred by excluding evidence of his mental capacity, absent a diminished capacity defense, (2) he received ineffective assistance of counsel because his trial counsel failed to object to the jury learning that the death penalty was not an issue, (3) the trial court erred by instructing the jury on an uncharged alternative means of first degree robbery; (4) the trial court violated Clark's right to a public trial by allowing parties to exercise peremptory challenges in writing; and the cumulative effects of the errors deprived him of his due process right to a fair trial.

We hold that the trial court did not err by excluding evidence of Clark's mental capacity, Clark has not shown that his trial counsel's deficient performance prejudiced him, and the trial court did not violate Clark's right to a public trial. Finally, because there was only one error committed in this case, the cumulative error doctrine is not applicable. Accordingly, we affirm

Clark's convictions for first degree murder, unlawful possession of a controlled substance with intent to deliver, and second degree unlawful possession of a firearm. However, because the trial court erred by instructing the jury on an uncharged alternative means of first degree robbery, we reverse Clark's conviction for first degree robbery and remand.

## FACTS

In 2011, Clark was walking to a friend's house when he encountered D.D.,[1] someone that he knew from school. Clark and D.D. walked to Clark's home, where he lived with his mother, and listened to music on the computer.

Clark then suggested that he and D.D. sell some of his mother's jewelry to buy food for a barbeque. Clark told D.D. that his mother kept her jewelry box in the spare room and led D.D. to the room. Then, because Clark could not reach the top shelf where the jewelry box was kept, D.D. offered to climb in the closet and Clark instructed him where to look. Although D.D. was slightly taller than Clark, D.D. had to climb on a shelf in the closet to reach the top shelf. Before climbing in the closet, D.D. removed a gun from his pocket, removed the magazine from the gun, and handed the gun without the magazine to Clark.

As D.D. was climbing in the closet, Clark aimed the gun towards the ceiling of the closet and shot D.D. in the back of the head, killing him. Clark then went to his neighbors' home and told them that he killed D.D. because D.D. "beat his baby's mom up . . . real bad, real bad." 8 Verbatim Report of Proceedings (VRP) at 907. Clark then told his neighbors that he "called [D.D.]

---

[1] D.D. was a minor at the time—initials are used to protect the minor's privacy.

over to [his] house, told [D.D.] to reach for something in [his] closet" and "popped [D.D.] in the back of his head" with a .22 caliber gun. 8 VRP at 907.

After leaving his neighbors' home, Clark wheeled a garbage can from the street into his home, and put D.D.'s body, shoes, and jacket in the can. Clark then wheeled the garbage can back out to the street.

Clark's neighbors reported what Clark told them to police. Police officers went to Clark's home, where they discovered D.D.'s body in the garbage can, and arrested Clark. The State charged Clark by amended information with five crimes: first degree murder (count I), first degree felony murder (count II), first degree robbery (count III), unlawful possession of a controlled substance with intent to deliver (count IV), and second degree unlawful possession of a firearm (count V).

During voir dire, outside the presence of the jury venire, the trial court raised the issue of telling the jury that the death penalty was not an issue. Clark did not object. During voir dire, the State disclosed to the venire that the death penalty was not an issue. Clark did not object.

The State's psychiatrist, Dr. Brent Oneal, testified at Clark's CrR 3.5 hearing about his evaluation of Clark to determine his competency to stand trial in a different court proceeding. Dr. Oneal testified that Clark was mildly mentally retarded.

The State moved to exclude the expert's testimony about Clark's "intellectual deficits," "mental retard[ation]," or "developmental disabil[ities]," arguing that the evidence was not relevant because the defendant's mental health and cognitive functioning were not at issue. Clerk's Papers (CP) at 213-15. The State argued that admitting evidence of Clark's mental deficits would "essentially bootstrap some form of mental defense." VRP (Dec. 17, 2012) at 15. Clark argued

that his mental capacity was relevant to whether premeditation and an intent to kill existed, and to the juror's perception of Clark's credibility.

The trial court ruled that evidence "about the fact that [Clark] was a special education student or that people [who] knew him considered him slow or tended to discount his testimony," and that he was had an individual education program while in school was admissible and could be raised by either party. VRP (Dec. 17, 2012) at 20. The trial court also ruled that the facts that Clark received disability and social security income were admissible, noting that it was "not sure exactly how relevant they are, but they're the kind of, perhaps, background facts that would present the picture that balances things for the jury so they don't make assumptions that he's lazy." VRP (Dec. 17, 2012) at 22. However, the trial court ruled that expert testimony regarding Clark's IQ, developmental delays, low birth weight, and mental capacity was inadmissible because it was not relevant without a diminished capacity defense.

A jury found Clark guilty as charged in the amended information. At sentencing, the trial court sentenced Clark for first degree murder, first degree robbery, unlawful possession of a

No. 45103-4-II

controlled substance with intent to deliver, and second degree unlawful possession of a firearm.[2]

Clark appeals.[3]

ANALYSIS

Clark argues that (1) his constitutional right to present a complete defense was violated by the trial court erroneously excluding evidence of his mental capacity, (2) his trial counsel was ineffective because counsel failed to object to allowing the venire to know that the death penalty was not an issue, (3) the trial court erred by instructing the jury on an uncharged alternative means of first degree robbery, (4) his right to a public trial was violated by the trial court allowing the parties to exercise peremptory challenges on paper, and (5) cumulative errors in the trial deprived him of his due process right to a fair trial. We affirm Clark's convictions except for the first degree robbery conviction. The trial court erred by instructing the jury on an uncharged alternative means of first degree robbery, and therefore, we reverse that conviction.

_____

[2] The jury found Clark guilty of first degree felony murder (count II). At sentencing, Clark moved to vacate the conviction of either first degree murder (count I) or first degree felony murder (count II) pursuant to double jeopardy. The State argued that the trial court should merge the two convictions into one for purposes of the judgment and sentence. The record does not contain an order vacating the felony murder conviction. Further, the judgment and sentence does not contain reference to the felony murder conviction. However, whether the trial court vacated the felony murder conviction or merged that conviction with the first degree murder conviction does not affect our analysis.

[3] Although the State charged Clark with unlawful possession of a controlled substance with intent to deliver and unlawful possession of a firearm, and the jury convicted Clark of these crimes, Clark does not raise any specific challenges to these convictions.

A.    EVIDENCE OF MENTAL CAPACITY, ABSENT A DIMINISHED CAPACITY DEFENSE

Clark argues that the trial court deprived him of his constitutional right to present a complete defense by excluding evidence of mental capacity.[4] Clark claims that the evidence was relevant to (1) his defense theory that he did not act with premeditation, intent, or recklessness; and (2) his credibility as a witness. Clark did not claim that he was not competent, or assert an insanity or diminished capacity defense.

The trial court did an ER 403 balancing analysis, and determined that any probative value of evidence regarding Clark's mental capacity was substantially outweighed by the danger of confusing and misleading the jurors because the diminished capacity defense was not raised. The trial court found that beyond "facts that are readily apparent to lay people," evidence of Clark's mental capacity was inadmissible, and that Clark was "not allowed to bootstrap a diminished capacity defense into this case without properly pleading it and establishing the requisite threshold." VRP (Dec. 17, 2012) at 21-22. Accordingly, the trial court ruled that evidence related to Clark's mental capacity was inadmissible because Clark did not assert a diminished capacity defense.

We review a trial court's decision to exclude evidence for an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Lord*, 161 Wn.2d at 283-84. An

---

[4] The trial court ruled that evidence that Clark was in an Individualized Education Program, that he received supplemental security income from the State, and witnesses' perception that Clark was "slow" was admissible. VRP (Dec. 17, 2012) at 20. The trial court also ruled that testimony from Dr. Oneal, who performed an evaluation of Clark's competency to stand trial in a different proceeding; evidence of Clark's IQ and other test results regarding Clark's mental capacity; and Clark's history of developmental delays and difficulties at birth was inadmissible.

abuse of discretion is found when "no reasonable person would take the view adopted by the trial court." *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001). "Appellate courts cannot substitute their own reasoning for the trial court's reasoning, absent an abuse of discretion." *Lord*, 161 Wn.2d at 295.

Criminal defendants have a constitutional right to present evidence in their own defense. *State v. Hawkins*, 157 Wn. App. 739, 750, 238 P.3d 1226 (2010), *review denied*, 171 Wn.2d 1013 (2011). But, the evidence must be relevant; there is no constitutional right to present irrelevant evidence. *Lord*, 161 Wn.2d at 294. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. For expert testimony to be admissible under ER 702, expert testimony must be helpful to the trier of fact to be admissible. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 169, 288 P.3d 1140 (2012). Expert testimony is only helpful if it is relevant. *Morris*, 176 Wn.2d at 169. To be relevant, expert testimony must have the tendency to make a fact of consequence to the trial's outcome more or less probable. ER 401; *Atsbeha*, 142 Wn.2d at 918.

1.      Mens rea

Clark claims that the evidence of his mental capacity was relevant to understanding his ability to assess risks, and to his argument that although he was capable of forming the required mens rea, he did not form it. Clark argues that evidence of his mental capacity and "decision-making process was relevant to showing his state of mind on the day in question." Br. of Appellant at 34. We disagree.

A diminished capacity defense allows a defendant to show that his ability to form the required mens rea was impaired because of a mental disorder. *Atsbeha*, 142 Wn.2d at 918; *State v. Johnson*, 150 Wn. App. 663, 670-71, 208 P.3d 1265, *review denied*, 167 Wn.2d 1012 (2009). The defense must be declared pretrial. *State v. Harris*, 122 Wn. App. 498, 506, 94 P.3d 379 (2004). A diminished capacity defense requires the defendant to present expert testimony "that a mental disorder . . . impaired the defendant's ability to form the culpable mental state to commit the crime charged." *Atsbeha*, 142 Wn.2d at 914.

Here, Clark contends that the evidence of his IQ, diagnosis of "mental retardation," low birth weight, and developmental delays are relevant to because the evidence could help the jury understand his decision making process and decide whether he possessed the required mens rea. Br. of Appellant at 30. Effectively, Clark argues that his mental retardation affected his ability to form the required mens rea. But this is precisely a diminished capacity defense—which Clark did not plead. *See Atsbeha*, 142 Wn.2d at 918-19, 921 (holding that under a diminished capacity defense, evidence that the defendant is diagnosed with a mental disorder is not relevant unless expert testimony demonstrates that the defendant's mental disorder affected his ability to form the required mens rea). Accordingly, the trial court did not abuse its discretion by ruling that, absent a diminished capacity defense, the evidence of his mental capacity was inadmissible.

Clark has not offered any Washington authority for his argument that the evidence is relevant absent a diminished capacity defense. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Clark cites *State v. Burr*, 195 N.J. 119, 948 A.2d 627 (2008), as support for the proposition that evidence of mental defect is properly admitted to help the jury assess the defendant's credibility and subjective perceptions, even in the absence of a diminished capacity defense. However, in *Burr*, the evidence specifically related to the defendant's mental disorder and how the related characteristics manifest, and would have explained how those characteristics affected the issues. *Burr*, 195 N.J. at 129. Here, however, beyond stating that the evidence is relevant, Clark has not identified *how* the evidence (from an expert or layperson) would be relevant to the issues of premeditation, intent, or recklessness in the absence of a diminished capacity defense.

Clark also relies on *United States v. Pohlot*, 827 F.2d 889 (3d Cir. 1987). There, the applicable federal law prohibited evidence that Washington expressly allows when a diminished capacity defense is pleaded. *Pohlot*, 827 F.2d at 905-07. *Pohlot* held that that the defendant "offered his evidence of mental abnormality in support of a legally unacceptable theory of lack of mens rea that amounts covertly to a variation of the partially diminished capacity defense precluded" by federal law. *Pohlot*, 827 F.2d at 906-07. Contrary to federal law, Washington permits evidence of a mental disorder not amounting to insanity as a diminished capacity defense. *Atsbeha*, 142 Wn.2d at 914. However, Clark did not plead a diminished capacity defense. *Pohlot* in inapplicable.

Here, the trial court was well within its discretion to exclude evidence it found irrelevant. *See Lord*, 161 Wn.2d at 295. We hold that the trial court did not abuse its discretion by excluding Dr. Oneal's testimony and other evidence of Clark's developmental delays.

2.    Credibility as a witness

Clark also claims that evidence of his mental capacity was relevant to his credibility as a witness.    At trial, he argued that jurors "might draw negative inferences" from the way he responded to questions while testifying.    Br. of Appellant at 38.    We disagree.

Clark has not offered any Washington authority to support his argument that evidence of mental capacity is relevant to credibility.[5]    As noted, "[w]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."    *DeHeer*, 60 Wn.2d at 126.

Clark relies on *State v. Sexton*, 311 N.J. Super. 70, 709 A.2d 288 (App. Div. 1998) to support his argument.    However, in *Sexton*, the court held that the defendant's mother's testimony about the defendant's placement in special education was relevant to the jury's evaluation of the defendant's demeanor.    *Sexton*, 311 N.J. Super. at 88.    Here, the trial court expressly allowed Clark to present evidence that he was in special education, as well as evidence that people who knew him considered him "slow."    VRP (Dec. 17, 2012) at 20.    Given the absence of a diminished capacity defense, the trial court did not abuse its discretion in excluding evidence of Clark's mental capacity.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Clark argues that his defense counsel was ineffective by failing to object to the jury learning that the death penalty was not an issue.    Specifically, Clark argues that informing the jury that the death penalty was not an issue made them less likely to pay attention, and that because the State's

---

[5] We note that ER 608 limits evidence attacking or supporting a witness' credibility to evidence in the form of reputation for truthfulness or untruthfulness. ER 608(a).

evidence "was not overwhelming," there is a reasonable probability that the error affected the jury's verdict. Br. of Appellant at 15. Although Clark's trial counsel's performance was deficient, Clark has not met his burden of demonstrating that the deficient performance prejudiced the outcome of his case. Thus, we hold that Clark did not receive ineffective assistance of counsel based on counsel's failure to object to the jury being told that the death penalty was not an issue.

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

1.    Deficient performance

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To rebut this presumption, a defendant bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33.

Washington courts have routinely held that "it is error to inform the jury during voir dire in a noncapital case that the case is not a death penalty case." *State v. Townsend*, 142 Wn.2d 838, 840, 15 P.3d 145 (2001). The jury's function is to determine the defendant's guilt or innocence as a fact-finder. *Townsend*, 142 Wn.2d at 846. With the exception of capital cases, the jury should

11

make its determination without regard to punishment, which is an issue of legislative policy. *Townsend*, 142 Wn.2d at 846. Defense counsel's representation fails to meet the standard of prevailing professional norms when she or he fails to object to either the State or the trial court informing the jury that the death penalty is not an issue. *Townsend*, 142 Wn.2d at 847; *State v. Mason*, 160 Wn.2d 910, 929-30, 162 P.3d 396 (2007), *cert. denied*, 533 U.S. 1035 (2008); *State v. Hicks*, 163 Wn.2d 477, 488, 181 P.3d 831, *cert. denied sub nom. Babbs v. Wash.*, 555 U.S. 919 (2008).

Defense counsel's failure to object to the State informing the jury that the death penalty was not an issue was deficient performance. Defense counsel's failure to object could not be part of a legitimate tactic because there was "no possible advantage to be gained." *See Townsend*, 142 Wn.2d at 847; *see also Hicks*, 163 Wn.2d at 487.

2.      Prejudice

For the defendant to prove that the deficient performance prejudiced the defense, the defendant must "prove that, but for counsel's deficient performance, there is a 'reasonable probability' that the outcome would have been different." *Hicks*, 163 Wn.2d at 486. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Clark argues that there is a reasonable probability that counsel's failure to object affected the jury's verdict. Clark contends that the "State's case for premeditated murder was not overwhelming," and that the jury could have found that Clark intentionally killed D.D. or committed manslaughter instead of finding that he committed a premeditated killing. Br. of Appellant at 15.

"Premeditation is the 'deliberate formation of and reflection upon the intent to take a human life.'" *Townsend*, 142 Wn.2d at 848 (quoting *State v. Gentry*, 125 Wn.2d 570, 597; 888 P.2d 1105 (1995)). Here, the State presented ample evidence of premeditation. Clark testified that the clip had been removed, but he still did think that he could fire a bullet out of it. Clark also testified that he knew guns were dangerous and could kill people, and he knew that he should not presume a gun is unloaded. Clark further testified that while D.D. was in the closet, Clark was sitting on the ground, "aiming [the gun] towards the [inside] ceiling of the closet," where he knew D.D. was. 13 VRP at 1595. Clark was "messing around with the gun" while aiming the gun towards the inside ceiling of the closet and shot D.D., killing him. 13 VRP at 1595. Also, Clark's neighbors testified that Clark told them that D.D had beat "up his baby's mom and that his mom had taught him to never let a man put hands on his baby's mom." 8 VRP at 850. Clark's neighbor also testified that Clark told her that he had killed a man by calling "[D.D.] over to [his] house, told [D.D.] to reach for something in [his] closet" and "just pointed it and popped the gun." 8 VRP at 851, 907. He just "popped him in the back of his head" with a "[d]euce deuce."[6] 8 VRP at 907. Based on the evidence, Clark has not demonstrated that the trial outcome would have differed if his trial counsel had objected to the State's disclosure.

Clark claims that his own testimony could lead to an inference that the shooting was an accident. This argument requires this court to weigh the evidence and determine the credibility of the witnesses, both of which are within the province of the jury. *State v. Andy*, 182 Wn.2d 294,

---

[6] A "[d]euce deuce" is a .22 caliber gun. 8 VRP at 907.

303, 340 P.3d 840 (2014). We will not weigh the evidence or determine the credibility of witnesses. *See State v. Myers,* 133 Wn.2d 26, 38, 941 P.2d 1102 (1997).

Clark also claims that the jury was less careful because it knew that the death penalty was not an issue. However, Clark fails to point to anything in the record showing that the jurors were "less attentive during trial, less deliberative in their assessment of the evidence" because the death penalty was not an issue. *Townsend,* 142 Wn.2d at 847.

We hold that Clark's trial counsel was deficient for failing to object to the jury learning that the death penalty was not an issue, but that Clark has not demonstrated that the outcome would have been different. Because Clark has not demonstrated that the error prejudiced him, his claim of ineffective assistance of counsel fails.[7]

C.      UNCHARGED ALTERNATIVE MEANS OF COMMITTING FIRST DEGREE ROBBERY

Clark argues, and the State concedes, that the trial court committed reversible error by instructing the jury on an uncharged alternative means of committing robbery. Defense counsel did not object below. Although defense counsel did not object, instructions to the jury on uncharged alternatives are a manifest error affecting a constitutional right that we will address for the first time on appeal. *State v. Laramie,* 141 Wn. App. 332, 342, 169 P.3d 859 (2007); *State v. Chino,* 117 Wn. App. 531, 538, 72 P.3d 256 (2003); RAP 2.5. We accept the State's concession.

---

[7] Clark contends that his counsel's performance prejudiced him because the State's evidence of first degree felony murder predicated on first degree robbery was not overwhelming. Pragmatically, this argument does not affect the outcome. At sentencing, first degree felony murder merged into first degree murder, and Clark's was sentenced for first degree murder—not first degree felony murder.

It is fundamental that the State inform an accused of the criminal charges to be met at trial, and the State cannot try an accused for an uncharged crime. *Laramie*, 141 Wn. App. at 342. When a crime may be committed in alternative ways or by alternative means, but the State elects to charge only one of the alternatives, a trial court errs by instructing the jury that it may consider the uncharged means by which the accused could have committed the crime. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). Instructing a jury on an uncharged alternative means violates the defendant's right to be informed of the charges against him or her. *Laramie*, 141 Wn. App. at 342 (citing U.S. CONST. amend. VI; WASH, CONST., art. 1, § 22).

"An erroneous instruction given on behalf of the party in whose favor the verdict was returned is presumed prejudicial unless it affirmatively appears that the error was harmless." *Bray*, 52 Wn. App. at 34-35. Because a jury instruction that contains uncharged alternative means is presumed prejudicial, "[o]n direct appeal, it is the State's burden to prove that the error was harmless." *In re Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013).

Here, the amended information charged Clark with taking property from D.D. while "armed with a deadly weapon, to-wit: a firearm." CP at 184. The court's instruction to the jury provided that the jury could "convict the defendant of the crime of Robbery in the First Degree, Count III," if either "(5)(a) [t]hat in the commission of these acts or in immediate flight therefrom the defendant was armed with a firearm *or* (b) . . . in the commission of these acts or in the immediate flight therefrom the defendant inflicted bodily injury." CP at 304 (Jury Instruction 28) (emphasis added).

The jury did not receive further instructions that clarified the appropriate grounds for finding Clark guilty of first degree robbery. Further, in closing arguments, the State argued that

the jury could find Clark guilty based on either ground. Because the jury did not receive other clarifying instructions and the court instructed the jury on an uncharged alternative (i.e., the defendant inflicted bodily injury during the commission of the act or in the immediate flight therefrom), it is possible that the jury convicted Clark based on the uncharged alternative. *See Laramie*, 141 Wn. App. at 343. The State concedes error, and it has not met its burden to demonstrate that the error was harmless. Accordingly, we accept the State's concession that the instructional errors constitute reversible error. *See Chino*, 117 Wn. App. at 541 (holding that the instructions on an uncharged crime required reversal).

D. PUBLIC TRIAL RIGHTS—PEREMPTORY CHALLENGES

Clark argues that the trial court violated his right to a public trial by allowing peremptory challenges to be made in writing in open court. In *State v. Webb* and *State v. Dunn*, we held that the trial court did not violate the defendant's right to a public trial when peremptory challenges were made on paper or during a side bar. *State v. Webb*, 183 Wn. App. 242, 247, 333 P.3d 470 (2014), *review denied*, 182 Wn.2d 1005 (2015); *State v. Dunn*, 180 Wn. App. 570, 574, 321 P.3d 1283 (2014), *review denied*, 181 Wn.2d 1030 (2015).

A defendant has a constitutional right to a public trial. *Dunn*, 180 Wn. App. at 574. We review alleged violations of the public trial right de novo. *Id.* "The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right." *Id.* In *Dunn*, we held that "[t]he public trial right does not attach to the exercise of challenges during jury selection." *Id.* at 575. In *Webb*, we held that the defendant's right to a public trial was not violated by counsel conducting peremptory challenges on paper. *Webb*, 183 Wn. App. at 246-47 (citing *Dunn*, 180 Wn. App. 575).

No. 45103-4-II

Clark argues that his right to a public trial was violated because counsel for both parties made peremptory challenges in writing and in private. The parties wrote their peremptory challenges on paper in open court and that writing was subsequently filed with the court. Although Clark invites us to disregard the case law, *Dunn* and *Webb* control this issue, and the public trial right does not apply to peremptory challenges during jury selection. We hold that Clark's right to a public trial was not violated.

E.    CUMULATIVE ERROR

Clark argues that he is entitled to a new trial under the cumulative error doctrine based on ineffective assistance of counsel and the trial court excluding evidence of his mental capacity. Br. of Appellant at 42-43. Cumulative errors may merit reversal even when each error alone could be considered harmless. *In re the Pers. Restraint of Yates*, 177 Wn.2d 1, 65-66, 296 P.3d 872 (2013). Courts apply the cumulative error doctrine to cases of repetitive or frequent errors—one instance is neither repetitive nor frequent. *See Yates*, 177 Wn.2d at 66.

Here, we hold that Clark did not receive ineffective assistance of counsel and that the trial court did not err by excluding the evidence of Clark's mental capacity. However, the court erred by instructing the jury on an uncharged alternative means of committing first degree robbery. Under these circumstances, we hold that the cumulative error doctrine does not apply.

17

No. 45103-4-II

We affirm Clark's conviction of first degree murder, unlawful possession of a controlled substance with intent to deliver, and second degree unlawful possession of a firearm; we reverse Clark's conviction of first degree robbery and remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.

18