IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80672-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| B.J.N., | |
| Appellant. | |

CHUN, J. — After an incident on a school bus, the State charged B.J.N. with possessing a dangerous weapon on school facilities. The trial court found B.J.N. guilty as charged. It sentenced her to six months of community supervision consecutive with six months of community supervision in the linked appeal, No. 80673-4-I. B.J.N. appeals. We affirm her disposition but remand for the trial court to modify the community custody term to run concurrently with the term in the linked case.

## I. BACKGROUND

Fourteen-year-old student B.J.N. argued with another student on a school bus. The bus driver reported a verbal disturbance to the police and parked on the side of the road. Officers Lever and Moss responded to the report, boarded the bus, and told B.J.N. to exit the bus. B.J.N. refused to exit. Officer Lever again told B.J.N. to exit the bus and this time she complied.

Citations and pin cites are based on the Westlaw online version of the cited material.

Officer Lever escorted B.J.N. to a patrol car, handcuffed her, placed her inside the car, and questioned her about the argument on the bus. After B.J.N. calmed down, the officer removed the handcuffs. B.J.N. began to adjust something around her waistband. Officer Lever frisked the waistband and located a gray folding knife with a three-inch curved blade behind her belt.

The State charged B.J.N. with possessing a dangerous weapon on school facilities under RCW 9.41.280(1). B.J.N. moved to suppress the knife and to dismiss the charge. Before the court ruled on the motion, B.J.N. entered into a diversion contract in this case and in the linked appeal. B.J.N. did not successfully satisfy her obligations under the diversion agreement and the court terminated the contract. The court tried B.J.N. based on a stipulated record. The court found her guilty of possessing a dangerous weapon on school facilities as defined in RCW 9.41.280. The court sentenced B.J.N. to six months of community supervision to run consecutive to six months of supervision in the linked appeal.

## II. ANALYSIS

B.J.N. contends that insufficient evidence supports her disposition and that the charging document is constitutionally insufficient. She also says that the trial court erred in imposing her community custody term consecutively with the term in the linked appeal. The State disagrees as to the sufficiency of the evidence and information issues but concedes that we should remand on the community custody issue.

2

A.  Sufficiency of Evidence

B.J.N. contends that insufficient evidence supports the guilty finding because the State failed to show that she carried the knife furtively with intent to conceal as defined by RCW 9.41.250(1)(b).  We disagree.

To challenge the sufficiency of the evidence, a respondent must show that, when viewing the evidence in the light most favorable to the State, a rational trier of fact could not have found the essential elements of the charged crime— here, RCW 9.41.280—beyond a reasonable doubt.  State v. Hendrickson, 129 Wn.2d 61, 81, 917 P.2d 563 (1996).  The State bears the burden of proving beyond a reasonable doubt each element of the charged crime.  State v. J.R., 127 Wn. App. 293, 297, 111 P.3d 264 (2005).  We defer to the trier of fact on issues about the persuasiveness of the evidence.  State v. Walton, 64 Wn. App. 410, 415–16, 824 P.2d 553 (1992).

The trial court found B.J.N. guilty of possessing a dangerous weapon on school facilities as defined in RCW 9.41.280, which states in pertinent part:

> It is unlawful for a person to carry onto, or to possess on, public or private elementary or secondary school premises, school-provided transportation, or areas of facilities while being used exclusively by public or private schools . . . any dangerous weapon as defined in RCW 9.41.250.

RCW 9.41.280(1)(b).

The law required the State to prove that B.J.N. (1) carried onto or possessed on (2) public or private school premises (3) any dangerous weapon as defined in RCW 9.41.250.  RCW 9.41.250(1)(b) provides that "[e]very person

3

who . . . [f]urtively carries with intent to conceal any dagger, dirk, pistol, or other dangerous weapon" is guilty of possession of a dangerous weapon.

B.J.N. contends the law requires the State to demonstrate she carried the knife furtively with intent to conceal as defined by RCW 9.41.250(1)(b).[1] But "[f]urtively carrying a dangerous weapon with intent to conceal is not an element of RCW 9.41.280." J.R., 127 Wn. App. at 298 ("We conclude that all weapons described in RCW 9.41.250 are 'dangerous weapons' for purposes of RCW 9.41.280").[2]

We conclude that sufficient evidence supports the trial court's guilty finding. The State charged B.J.N. with possession of a dangerous weapon on school facilities under RCW 9.41.280, not RCW 9.41.250(1)(b). J.R., 127 Wn. App. at 298 ("[I]f J.R. had been charged under RCW 9.41.250(2), the State would have had to prove J.R. carried the dagger '[f]urtively…with intent to conceal.'" (alteration in original) (quoting RCW 9.41.250)).

---

[1] Even if the State charged B.J.N. under RCW 9.41.250, "[that statute] by its terms does not require furtive overt movement. It does require evidence of intent to conceal a dangerous weapon." State v. Myles, 127 Wn.2d 807, 815, 903 P.2d 979 (1995). In Myles, the evidence supported a finding that Myles furtively carried the knife because Myles carried the knife in an inner pocket, "an unusual and suspicious place to carry a knife." 127 Wn.2d at 817. Similar to the circumstances in Myles, B.J.N. carried the knife behind her belt, an unusual and suspicious place to carry a knife, and made adjustments prior to Officer Lever discovering the knife.

[2] See also State v. Bonebright, noted at 112 Wn. App. 1028, 2002 WL 1389426 at *2 (2002) (holding, where a student brought an eight-inch serrated edged knife to school, that RCW 9.41.280 refers to RCW 9.41.250 solely for the definition of dangerous weapon and thus elements of RCW 9.41.250(2) are not elements of RCW 9.41.280); see GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions"). RCW 9.41.250(1)(b) was formerly RCW 9.41.250(2) and is listed in Bonebright and J.R. as such.

B. Sufficiency of the Information

For the first time on appeal, B.J.N. contends that the information fails to satisfy constitutional requirements because it does not specify particular facts supporting the essential elements of RCW 9.41.280(1). The State disagrees. We determine the information, while vague, is constitutionally sufficient.

We review de novo a challenge to the sufficiency of a charging document. State v. Siers, 174 Wn.2d 269, 273–74, 274 P.3d 358 (2012). We construe the charging document liberally when, as here, the respondent challenges it for the first time on appeal. State v. Kjorsvik, 117 Wn.2d 93, 103, 812 P.2d 86 (1991); State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). If the charging document is constitutionally deficient, the remedy is dismissal without prejudice to the State for refiling of charges. State v. Simon, 120 Wn.2d 196, 199, 840 P.2d 172 (1992).

"A charging document must describe the essential elements of a crime with reasonable certainty such that the accused may prepare a defense and plead the judgment as a bar to any subsequent prosecution for the same offense." City of Seattle v. Termain, 124 Wn. App. 798, 802, 103 P.3d 209 (2004).[3] This "essential elements" rule requires a charging document to allege facts supporting every element of the offense. Kjorsvik, 117 Wn.2d at 98. "[I]f the document cannot be construed to give notice of or to contain in some manner

---

[3] This rule stems from article 1, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution, which afford the accused the right to know the nature and cause of the accusation against them. Kjorsvik, 117 Wn.2d at 97.

5

the essential elements of a crime, the most liberal reading cannot cure it." State v. Moavenzadeh, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998) (quoting State v. Campbell, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995)). "If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice." State v. Haberman, 105 Wn. App. 926, 934, 22 P.3d 264 (2001) (quoting McCarty, 140 Wn.2d at 425). We do not look past the face of the charging document or examine documents such as the statement of probable cause when applying the essential elements test. State v. Pry, 194 Wn.2d 745, 753, 452 P.3d 536 (2019).[4] "Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." Kjorsvik, 117 Wn.2d at 109. "While the information need not restate the precise language of the essential elements of a crime, the information must do more than merely name the offense and list the elements—it must *allege* the particular facts supporting them." Pry, 194 Wn.2d at 752 (emphasis added).

But "[i]t is sufficient to charge in the language of a statute *if* the statute defines the offense with certainty." Kjorsvik, 117 Wn.2d at 99. The State's "failure to allege specific facts in an information may render [it] vague, but . . . not constitutionally defective." State v. Laramie, 141 Wn. App. 332, 340, 169 P.3d 859 (2007). "A charging document that states each statutory element of a crime,

---

[4] If the defendant cannot satisfy the essential elements test, they may alternatively claim that they were still prejudiced by inartful language in the charging document, causing them a lack of notice. Kjorsvik, 117 Wn.2d at 105–06. B.J.N. makes no such claim.

but is vague as to some other significant matter, may be corrected under a bill of particulars." State v. Winings, 126 Wn. App. 75, 84, 107 P.3d 141 (2005). If the respondent does not demand a bill of particulars at trial, "a challenge to vague, inartful or imprecise language will not be entertained on appeal." Laramie, 141 Wn. App. at 340.

Here, the State charged B.J.N. with violating RCW 9.41.280(1). The information says:

> That the respondent, on or about the 25th day of October, 2018, did carry onto and possess on elementary or secondary school premises, school-provided transportation, or facility areas while being used exclusively by schools a dangerous weapon; proscribed by RCW 9.41.280(1), a gross misdemeanor.

This closely tracks the language of RCW 9.41.280(1)(b), which provides, in part:

> It is unlawful for a person to carry onto, or to possess on, public or private elementary or secondary school premises, school-provided transportation, or areas of facilities while being used exclusively by public or private schools . . . any dangerous weapon as defined in RCW 9.41.250.

B.J.N. contends the charging document is deficient because it lacks any "particular fact" to support the essential elements. She claims the information fails to inform B.J.N. what object is the "dangerous weapon," what statutory definition that object met, and on which school facility the State alleges she committed the offense.

In Termain, the information tracked the language of the statute for violating a domestic violence order but failed to identify the order claimed to be violated or the court granting the order. 124 Wn. App. at 803. The court held the charging document was constitutionally deficient, reasoning:

> The charging document here is awkwardly worded and vague. Frankly it is gobbledygook. It charges the language of the statute but it does not recite the specific statute pursuant to which the underlying order was issued, the number of the order, the date of issuance, or any underlying facts or the name of the protected person. There are many simple ways the City could have included bare facts in the charging document so that Termain could fairly imply what actual conduct was being charged. To fail to do so makes Termain guess at the crime alleged to have [been] committed.

Id. at 806.

In State v. Zillyette, the State charged the defendant with controlled substances homicide after the defendant provided the victim with Xanax and methadone, leading to the victim's overdose death. 178 Wn.2d 153, 156, 307 P.3d 712 (2013). The information merely recited the statutory elements of controlled substances homicide without specifying which controlled substance the defendant provided the victim. Id. Under the charging statute, provision of Xanax could not serve as a basis for controlled substances homicide, but provision of methadone could. Id. at 160. Our Supreme Court held that because the information did not list either the name of the controlled substance or its schedule level, the information was constitutionally deficient. Id. at 163.

In Winings, the State charged the defendant with second degree assault while armed with a deadly weapon, and the associated information stated: "In the County of Clallam, State of Washington, on or about the 24th day of March, 2003, the Defendant did assault another with a deadly weapon; in violation of RCW 9A.36.021, a Class B felony." 126 Wn. App. at 81. But there, the court stated that while the information did not identify the victim, weapon used, or how the defendant used the weapon, when construed liberally, it sufficiently stated the

8

required facts and each essential legal element of the charge. Id. at 85–86. The court noted that there is no requirement for the State to "describe the facts with great specificity," and since the defendant did not request a bill of particulars at trial, the court declined to consider the issue. Id. at 85-86.

Here, RCW 9.41.280(1) defines the charged offense with certainty such that the information is constitutionally sufficient. Construed liberally, the information alleges "sufficient facts to support every element of the crime charged": it alleges that B.J.N. carried or possessed a dangerous weapon on an elementary or secondary school premises, school-provided transportation, or facility areas while being used exclusively by schools, that her actions violated RCW 9.41.280(1), and that the incident occurred on or about October 25, 2018. Winings, 126 Wn. App. at 85 (quoting State v. Leach, 113 Wn.2d 679, 688, 782 P.2d 552 (1989) (emphasis omitted)). As noted by Winings, the State need not have stated what kind of weapon B.J.N. used. And unlike in Zillyette, where two substances were at play, there was not more than one item or facility that could have served as the basis for the charge here. Furthermore, the information in Termain required more specificity because the charged crime was one against another specific person. 124 Wn. App. at 805.

Thus, the information's omission of the particular school facility on which B.J.N. possessed the dangerous weapon, and what sort of dangerous weapon she possessed, are matters of vagueness, not constitutional deficiency. While the information may be vague, B.J.N. apparently did not request a bill of particulars at trial and may not now raise this issue on appeal.

9

## C. Community Custody Term

The trial court imposed consecutive six-month terms of community custody for this disposition and the disposition in the linked appeal. B.J.N. says the court erred in imposing these terms consecutively, since RCW 13.40.180(2) requires that "[w]here disposition in separate disposition orders is imposed on a youth, the periods of community supervision contained in separate orders, if any, shall run concurrently." The State properly concedes that the two terms of community custody must run concurrently.

"A trial court's sentencing authority is limited to that granted by statute," and "[w]hether a sentencing court has exceeded its statutory authority is a question of law that we review de novo." State v. Button, 184 Wn. App. 442, 446, 339 P.3d 182 (2014). Use of the word "shall" is presumptively imperative, creating a duty rather than conferring discretion. State v. Blazina, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). Thus, the trial court erred by imposing the two community custody terms consecutively.

We agree with the State's concession and remand for the trial court to impose the terms concurrently.

Chun, J.

WE CONCUR:

10