[No. 20938–8–I. Division One. July 11, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. DEBRA KAY BRAY, *Appellant.*

---

*Tom P. Conom,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Cassandra Noble, Deputy,* for respondent.

SWANSON, J.—Debra Bray appeals from the judgment and sentence entered following her conviction for forgery. She contends the trial court erred in instructing the jury on an alternative means of committing the crime that was not charged in the information. We agree and reverse.

By information filed March 24, 1986, Bray was charged with falsely making, completing, or altering Carol Whitney's signature on a promissory note. The charge arose from an incident on July 10, 1984, when Bray gave Whitney a $3,000 personal check.

Whitney and Bray had been close friends for more than 10 years. According to Whitney, the money was a gift, given to her by Bray to spite her husband at a time when the Brays were temporarily separated. Whitney maintained that there was never any discussion that the money was a loan; nor was there any discussion of a promissory note or repayment. Whitney claimed she offered to return some of the money several times, offers that Bray refused.

A short time after giving Whitney the check, Bray reconciled with her husband. Following the reconciliation, the relationship between Whitney and Bray cooled. In October 1984, Whitney received a letter from Bray's attorney, requesting repayment of the $3,000 and enclosing a photocopy of a promissory note, dated July 10, 1984. The note called for repayment of the $3,000 plus 10 percent interest within 60 days and contained what purported to be Carol Whitney's signature. Whitney testified that she had never seen the promissory note before and that this letter was the first indication of Bray's desire for repayment, with the

exception of one brief telephone call Bray had placed to Whitney's husband.[1]

Bray gave a fundamentally different account of the transaction. According to Bray, Whitney asked to borrow $3,000 to meet closing costs on a new house. Whitney explained that there had been a delay in the receipt of proceeds from a recent stock transaction and promised to repay the loan in 30 days. Bray claimed that she discussed repayment and a promissory note with Whitney, but that the two agreed a promissory note was unnecessary because Whitney was given a check rather than cash as originally requested. Bray acknowledged having prepared the promissory note on the night before giving Whitney the check.

When Whitney failed to repay the loan on schedule, Bray informed her that she was bringing the note for signature to the Whitneys' housewarming party, which occurred in September 1984. Bray testified that she left her purse in plain view on the kitchen counter; the note was sticking out of the purse and Whitney "certainly would have seen it." After leaving the party briefly, Bray returned to pick up her purse and noticed that "the promissory note had been put inside and the purse was zipped." Bray did not discover that the note had been signed until several weeks later. She denied having signed Whitney's name and having any reason to suspect that the signature on the note was not genuine.

Both sides presented handwriting experts. Timothy Nishimura, who testified for the State, opined that Whitney's signature on the note was a "simulated forgery," *i.e.*, a conscious attempt to make the signature look genuine. Nishimura stated that it is usually impossible to identify the author of a simulated forgery. Nishimura concluded that Whitney had not signed the note, but was unable either to identify or to eliminate Bray as the writer.

---

[1] At some later time, Whitney agreed to repay the money on the advice of her attorney, "because of it being a community property state that [Bray] had no right to give it to us without her husband's consent . . ."

Jan Beck, a forensic document examiner, testified for Bray. He agreed with Nishimura that Whitney's signature was a simulated forgery and that it is impossible to identify the author of the simulation. Beck also concluded that Whitney's endorsement on the $3,000 check had not been the model for the forgery.

Bray was charged pursuant to RCW 9A.60.020(1)(a), which provides that one is guilty of forgery

if, with intent to injure or defraud:
(a) He falsely makes, completes, or alters a written instrument . . .

During trial, the State twice sought to amend the information by adding an alternative means of committing forgery pursuant to RCW 9A.60.020(1)(b), which provides that one is guilty of forgery

if, with intent to injure or defraud:
. . .
(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.

The State's motions were denied. Over defense objections, however, the trial court gave an instruction defining forgery in terms of both alternative means. The "to convict" instruction contained only the elements of the charged alternative. Also over defense objections, the trial court gave an accomplice instruction.

A jury found Bray guilty as charged. She was sentenced to 5 days' confinement converted to 40 hours of community service and to 12 months' inactive community supervision.

The primary issue on appeal involves instruction 5A, which provided:

A person commits the crime of forgery when, with intent to injure or defraud, he or she falsely makes, completes or alters a written instrument *or possesses, utters, offers, disposes of or puts off as true, a written instrument which he or she knows to be forged.*

(Italics ours.) Instruction 5A essentially set forth the two statutory means of committing forgery defined in RCW

9A.60.020. Because Bray was charged only pursuant to the first alternative, however, RCW 9A.60.020(1)(a), she contends instruction 5A erroneously permitted the jury to convict her of a crime that was not charged.

■ When a statute provides that a crime may be committed in alternative ways or by alternative means, the information may charge one or all of the alternatives, provided the alternatives are not repugnant to one another. *State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942). When the information charges only one of the alternatives, however, it is error to instruct the jury that they may consider other ways or means by which the crime could have been committed, regardless of the range of evidence admitted at trial. *State v. Severns, supra.* The manner of committing a crime is an element and the defendant must be informed of this element in the information in order to prepare a proper defense. *See State v. Carothers*, 84 Wn.2d 256, 263, 525 P.2d 731 (1974). One cannot be tried for an uncharged offense. *State v. Brown*, 45 Wn. App. 571, 576, 726 P.2d 60 (1986). Thus, an instruction here in the language of the uncharged alternative means of committing forgery was error.

In *State v. Severns, supra,* our Supreme Court held that it was error to permit the jury to consider two statutory means of committing rape when only one of the alternatives was charged in the information. The faulty instruction in *Severns* informed the jury that the alternative definitions were *"for your consideration . . ." Severns*, at 546. The court found that the error was exacerbated by the prosecutor's reference to the uncharged method during closing argument and by the absence of any subsequent instruction that expressly precluded the jury from considering the uncharged means of committing rape. *Severns*, at 549. The court concluded the the error was prejudicial because the jury might have convicted the defendant of rape under either alternative. *Severns*, at 552.

■ An erroneous instruction given on behalf of the party in whose favor the verdict was returned is presumed

prejudicial unless it affirmatively appears that the error was harmless. *State v. Brown, supra.*[2] An error in instructing the jury on an uncharged method of committing a crime may be harmless if "in subsequent instructions the crime charged was clearly and specifically defined to the jury." *Severns,* at 549; *see also State v. Pierson,* 101 Wash. 318, 172 P. 236 (1918). Here, as in *Severns,* the prosecutor referred to the uncharged definition during closing argument. Unlike *Severns,* however, the "to convict" instruction, instruction 6, set forth only the elements of the charged means of forgery and required all of the specified elements to be proved beyond a reasonable doubt. The instruction specifically advised the jury that it had a duty to acquit Bray if it had a reasonable doubt as to any one "of *these* elements." (Italics ours.) If the jury only considered instructions 5A and 6, any instructional error was arguably harmless because of the explicit directions to convict Bray of the charged crime or acquit her.

The presence of the accomplice instruction, however, rendered the instructional error prejudicial. Instruction 5B refers several times to an accomplice in the commission "of *a* crime" and "*the* crime" and does not restrict its meaning to the elements set forth in the "to convict" instruction. Thus, if the jury believed that Bray did not forge the signature herself, instruction 5B, coupled with the definition of the uncharged means of forgery in instruction 5A and the prosecutor's reference to the uncharged elements as

---

[2]It is difficult to reconcile the trial court's denial of the State's motions to amend the information with its statement in a letter ruling denying Bray's motion for a new trial that there was nonetheless "ample evidence" to support the giving of instruction 5A. The trial court characterized the problem of instruction 5A as involving the adequacy of the information and, relying on CrR 2.1(b), concluded that omission of RCW 9A.60.020(1)(b) from the *information* had not prejudiced Bray's defense because "a defense against subsection (a) would necessarily include a defense against subsection (b)." However, whether Bray *could* have adequately defended herself against a charge pursuant to subsection (b) is immaterial. Because the trial court denied the motion to amend, she had no obligation to do so. The trial court acknowledged the relevance of *Severns,* but for reasons not completely clear, concluded that the case had been "implicitly overruled."

part of "the crime" of forgery, permitted the jury to believe it could find Bray guilty as an accomplice to someone who committed forgery pursuant to RCW 9A.60.020(1)(b). *Cf. State v. Lane*, 36 Wn.2d 227, 217 P.2d 322, *modified on other grounds on rehearing*, 37 Wn.2d 145, 222 P.2d 394 (1950) (reversible error to instruct on uncharged alternative means of committing rape even though "to convict" instruction mentioned only one alternative). Indeed, the State argues that the jury was entitled to reach precisely this result.

The State maintains that a full definition of forgery was necessary because the jury properly could have convicted Bray as an accomplice under *both* forgery alternatives:

> If she acted as an accomplice, she was such by aiding someone acting under either alternative. The jury could not have determined whether the defendant had been an accomplice to forgery if it had been instructed only partially on the alternative means of commission.

Brief of Respondent, at 7. We have discovered no authority, however, for the proposition that one may be convicted as an accomplice to someone committing a crime by uncharged alternative means. *Cf. State v. Severns, supra.* The fact that there might have been evidence to support a conviction on this basis serves only to increase the likelihood that the error in instruction 5A was prejudicial. *See State v. Brown, supra.*

In summary, the uncertain effect of the accomplice instruction and the prosecutor's reference to the full statutory definition during closing argument compel our conclusion that the error here was not harmless. Given our resolution of the foregoing issues, we do not address Bray's remaining assignments of error.

Judgment reversed.

COLEMAN, A.C.J., and WINSOR, J., concur.