79 P.3d 30 (2003)
119 Wash.App. 85
STATE of Washington, Respondent,
v.
Robert Judge SPIERS, Appellant.
No. 28507-0-II.
Court of Appeals of Washington, Division 2.
November 12, 2003.
*31 Rita Joan Griffith, Seattle, WA, for Appellant.
Terry Lane, Pierce Co. Pros. Ofc., Tacoma, WA, for Respondent.

PUBLISHED IN PART OPINION
BRIDGEWATER, J.
Robert Judge Spiers appeals his convictions for unlawful manufacturing of a controlled substance, eight second degree unlawful firearm possessions, unlawful possession of a short-barreled shotgun, and bail jumping. We hold that RCW 9.41.040(1)(b)(iv) unconstitutionally infringes on the right to bear arms by criminalizing firearm ownership for persons merely charged with a "serious offense," regardless of whether they have relinquished possession. We reverse three counts of unlawful firearm possession in which there was evidence of ownership and, based on the State's concession of error, the conviction for a short-barreled shotgun. We affirm all other convictions, including five counts of second degree unlawful firearm possession for which there was no evidence of ownership. We reverse in part and affirm in part.

FACTS
In May 2001, police officers executed a search warrant at Spiers's Tacoma home, seizing eight firearms,[1] a quantity of methamphetamine, *32 and evidence of methamphetamine manufacturing.[2] Two of the firearms had their serial numbers filed off. Spiers, his wife, and his 16-year-old daughter were home when the police arrived.
The State charged Spiers with unlawful manufacturing of a controlled substance with a child enhancement (count I), eight counts of second degree unlawful firearm possession (counts II through IX), unlawful possession of a short-barreled shotgun (count X), two counts of alteration of identifying marks (counts XI and XII), and bail jumping (count XIII). The bail jumping charge arose from Spiers's failure to appear at an October 2001 hearing on another cause.
Four hours before executing the warrant, the police had stopped the car of Steven Coe, Spiers's brother-in-law, shortly after he left Spiers's home. The police found evidence of methamphetamine manufacturing inside Coe's car.[3] At trial, the State did not introduce evidence that Spiers had dominion and control over Coe's car or that the evidence in Coe's car had been inside the Spierses' home.
Spiers and his wife testified that they had been living separately since Christmas 2000. Spiers claimed that he was living at his work place, a mechanic shop. Apparently, the Spierses' marital problems stemmed from the fact that Spiers had been injured and was out of work.
At trial, Mrs. Spiers testified that their three children lived with her parents. She explained that her brother, Coe, had been staying at the house for several months while she was away visiting a friend and that he had introduced her to methamphetamine use. She also claimed that the methamphetamine that the police recovered was either hers or Coe's. Mrs. Spiers had earlier pleaded guilty to conspiracy to manufacture methamphetamine.
The Spierses' 16-year-old daughter testified that she visited her parents' house several times a week after school and occasionally spent the night. Spiers claimed to have been at the house when the police arrived by coincidence, as he was there to do a favor for his wife's friend.
Except for the two charges of alteration of identifying marks, the jury found Spiers guilty of all counts. At sentencing, the trial court ruled that unlawful possession of a short-barreled shotgun and unlawful possession of a firearm pertaining to the same weapon were separate criminal conduct for sentencing purposes.

I. Charging Document
Spiers argues, for the first time on appeal, that the information charging him with bail jumping erroneously lacked an essential element, the underlying crime.[4] When challenged post-verdict, an information is liberally construed.[5] "The court asks whether the necessary facts appear in any form in the charging document. If so, the defendant must show actual prejudice to obtain dismissal."[6]
Count XIII of the fourth amended information provided:

*33 That [Spiers] ... did unlawfully and feloniously, having been held for, charged with, or convicted of a class "B" or "C" felony, and been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court in this state, knowingly fail to appear as required, contrary to RCW 9A.76.170(1) and RCW 9A. 76.170(3)(c).

Clerk's Papers (CP) at 20.
The bail jumping statute provides:
(1) Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.
. . . .
(3) Bail jumping is:
(a) A class A felony if the person was held for, charged with, or convicted of murder in the first degree;
(b) A class B felony if the person was held for, charged with, or convicted of a class A felony other than murder in the first degree;
(c) A class C felony if the person was held for, charged with, or convicted of a class B or class C felony;
(d) A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.[[7]]
The information tracks subsection one of the bail jumping statute but, arguably, not subsection three, which defines the degree and penalty for the offense. In effect, Spiers argues that the information did not notify him of the class of the bail jumping charge.
In State v. Ibsen,[8] this court held that the underlying offense is an essential element of bail jumping, but only because it determines the penalty involved.[9] In Ibsen, the information ignored the applicable degree and penalty of bail jumping.[10] But here, the information, liberally construed, informed Spiers of all the elements of bail jumping, including the penalty that he faced. The information expressly states that Spiers failed to appear after being charged with a class B or C felony, which corresponds to class C felony bail jumping.[11] Thus, the information was sufficient.

II. RCW 9.41.040(1)(b)(iv)
A search of the appellants house turned up all of the firearms in this case. Six of the guns were located in a safe in Spiers's bedroom. Spiers told an officer that he used the safe to store guns. Another gun was in Spiers's bedroom against the wall. And one gun was found in an unlocked chest in his bedroom. Spiers testified that he owned three of the firearms: the black powder revolver, count IX; the Smith and Wesson.38 revolver, count VII; and the Smith and Wesson .357 revolver, count VI. This was the sole evidence relating to Spiers's ownership of any of the firearms.
The jury found Spiers guilty of eight counts of second degree unlawful firearm possession under RCW 9.41.040(1)(b)(iv), which provides in part:
[(1)](b) A person ... is guilty of the crime of unlawful possession of a firearm in the second degree, if the person does not qualify under (a) of this subsection for the crime of unlawful possession of a firearm in the first degree and the person owns, has in his or her possession, or has in his or her control any firearm:
. . . .
(iv)If the person is free on bond ... pending trial ... for a serious offense as defined in RCW 9.41.010.
*34 . . . .
[(2)](b) Unlawful possession of a firearm in the second degree is a class C felony.[[12]]
In short, a person is guilty of second degree unlawful firearm possession if he owns, possesses, or controls any firearm while free on bond pending trial for a serious offense. Spiers was free on bond pending trial for a serious offense when he possessed the firearms at issue. He contends that the ownership possession of RCW 9.41.040(1)(b)(iv) violates article I, section 24 of the Washington Constitution,[13] which states:
The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.[[14]]
We presume that a statute is constitutional, and the party challenging it must prove that it is unconstitutional beyond a reasonable doubt.[15] If possible, we will construe a statute so as to render it constitutional.[16]
Our Supreme Court has "consistently held that the right to bear arms in art. I, § 24 is not absolute, but instead is subject to `reasonable regulation' by the State under its police power."[17] An arms regulation is constitutional if it is a "`reasonable limitation,' one that is reasonably necessary to protect public safety or welfare, and substantially related to legitimate ends sought."[18] Under this analysis, we balance the regulation's public benefit against the degree to which it frustrates the constitutional provision's purposeto ensure self-defense or defense of state.[19]
Under RCW 9.41.040(1)(b)(iv), a person is guilty of second degree unlawful firearm possession for retaining ownership of a firearm, even if he relinquishes possession and control of the firearm. In other words, a person free on bond pending trial for a serious offense could turn his firearms over to the police and still be found guilty of unlawful firearm possession because he would retain ownership of the firearms. It should be kept in mind that, separate from the challenged ownership provision, the State may prohibit a defendant from possessing guns. RCW 9.41.040(1)(b)(iv) (contains prohibition on possession that is unchallenged here); CrR 3.2(d)(3) (on showing that defendant poses substantial danger). Thus, in analyzing Spiers's rights, this court examines whether it is reasonably necessary to prohibit Spiers's gun ownership rights in addition to his gun possession rights.
Looking to the balancing test, this court balances the public benefit to prohibiting gun ownership by defendants who are free pending trial with the degree of frustration of the constitutional right. To avoid prosecution, Spiers not only had to sell his guns, but he had to arrange for the sale before he left custody. Thus, the degree of frustration is both immediate and complete. Though the frustration need only be temporary if the defendant is acquitted, the burden outweighs the benefits. The State's argument that a defendant who chooses to be out on bail necessarily submits to this divestiture, demonstrates the significance of the *35 rights at stake: one who is entitled to pretrial freedom must choose between incarceration and gun ownership even where his guns would be out of his possession.
The statute's prohibition against firearm ownership is not "reasonably necessary" to protect public safety, at least not as it applies to a person free on bond or personal recognizance pending trial for a serious offense. The prohibition against possession and control of a firearm is sufficient to protect public safety and welfare. The public does not derive much, if any, additional benefit by forbidding a person who is free on bond pending trial for a serious offense from owning firearms beyond that benefit secured by forbidding such persons from possessing or controlling firearms. That is, the public faces little danger from a defendant released on bond pending trial who owns, but may not possess, guns. Accordingly, the temporary removal of Spiers's gun ownership rights was not reasonably necessary to protect public safety. We hold the prohibition against ownership to be unconstitutional.[20]
Consequently, we must consider the impact of Spiers's convictions under RCW 9.41.040(1)(b)(iv). The "to convict" instruction permitted the jury to convict Spiers of unlawful firearm possession if he knowingly owned, possessed, or controlled a firearm. For five of the counts, however, there was no evidence as to the alternative of "ownership." As to those counts, there was substantial evidence of possession and control; thus, the instructional error was mere surplusage. State v. Hale, 26 Wash.App. 211, 611 P.2d 1370 (1980), review denied, 95 Wash.2d 1030 (1981). Those convictions do not need to be reversed.
But there was evidence of ownership for counts VI, VII, and IX. Because we hold that the "ownership" provision is unconstitutional, prejudice is presumed. The burden on the State is to demonstrate constitutional harmless error beyond a reasonable doubt. State v. Williams, 144 Wash.2d 197, 213, 26 P.3d 890 (2001). Since the jury returned a general verdict, it is impossible to discern which alternative they relied on. Consequently, because the statute's prohibition against ownership is unconstitutional, we reverse Spiers's unlawful firearm convictions on these three counts and remand for a new trial as to those counts only.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: MORGAN, J., and QUINNBRINTNALL, A.C.J.
NOTES
[1] The weapons included a black powder pistol (Exhibit 19), a Smith & Wesson .38 caliber revolver (Exhibit 17), two Smith & Wesson .357 magnum revolvers (Exhibits 16, 18), a 12-gauge shotgun (Exhibit 20), a .22 caliber semi-automatic pistol (Exhibit 15), a Colt .38 caliber revolver (Exhibit 14), and a Ruger .44 magnum revolver (Exhibit 13).
[2] The evidence included 35 empty pseudoephedrine blister packs; a can of acetone, a bottle of lye, and two empty bottles of methanol; a plastic pitcher coated with a white residue and four mason jars; vinyl and plastic tubing; aluminum foil; a glass baking dish with pseudoephedrine and triprolidine residue; a zip-lock container holding 71.9 grams of pseudoephedrine and triprolidine; a triple-beam balance scale; and handwritten instructions on how to complete a phase of the methamphetamine manufacturing process that was locked in Spiers's safe.
[3] The evidence found in Coe's car included lithium batteries, empty mason jars containing residue, a gallon of toluene, aluminum foil, plastic tubing, pliers, a respirator, muriatic acid, a pressurized tank with bluish corrosion on the fittings, and heavy duty gloves.
[4] See State v. Kjorsvik, 117 Wash.2d 93, 97, 812 P.2d 86 (1991) (an information must contain "[a]ll essential elements of a crime").
[5] State v. Johnson, 119 Wash.2d 143, 149-50, 829 P.2d 1078 (1992).
[6] State v. Ibsen, 98 Wash.App. 214, 216, 989 P.2d 1184 (1999) (citing Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86).
[7] RCW 9A.76.170.
[8] Ibsen, 98 Wash.App. 214, 989 P.2d 1184.
[9] See Ibsen, 98 Wash.App. at 217, 989 P.2d 1184 ("The underlying offense of a bail jumping charge is relevant only to determining the penalty involved.").
[10] Ibsen, 98 Wash.App. at 215, 217, 989 P.2d 1184.
[11] RCW 9A.76.170(3)(c).
[12] RCW 9.41.040 (emphasis added).
[13] Spiers challenges the constitutionality of RCW 9.41.040 only as it relates to "ownership." He has not asked us to review the constitutionality of the entire statute. If he had, he would have to meet the rigorous test set forth in Unemployment Comp. Dep't v. Hunt, 17 Wash.2d 228, 239, 135 P.2d 89 (1943), and show that the statute is unseverable or that the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purposes of RCW 9.41.040.
[14] WASH. CONST. ART. I, § 24.
[15] State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995).
[16] State v. Reyes, 104 Wash.2d 35, 40, 700 P.2d 1155 (1985).
[17] City of Seattle v. Montana, 129 Wash.2d 583, 593, 919 P.2d 1218 (1996); accord Morris v. Blaker, 118 Wash.2d 133, 144, 821 P.2d 482 (1992).
[18] Montana, 129 Wash.2d at 594, 919 P.2d 1218 (citation omitted).
[19] Montana, 129 Wash.2d at 594, 919 P.2d 1218.
[20] Because we hold that the regulation is not reasonably necessary and therefore unconstitutional, we need not address Spiers's argument regarding due process.