# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52916-5-II |
| Respondent, | |
| v. | |
| JOHN MICHAEL SANCHEZ, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — John Sanchez appeals his conviction for tampering with a witness. He argues that the trial court erred by denying a motion for a new trial after instructing the jury on an uncharged alternative way of tampering with a witness. He argues he was prejudiced. The State concedes the error but contends it was harmless. We agree with Sanchez and reverse.

## FACTS

In June 2018, Sanchez, an inmate at the Thurston County Jail, had two unresolved cases. The State listed Rachel Nickels, the mother of Sanchez's two children, as a witness in both cases. Jail staff believed that Sanchez would attempt to contact Nickels in violation of a no-contact order, so they put a hold on any mail from Sanchez's custody unit sent to Nickels's address.

Lieutenant Jenny Hovda intercepted an envelope addressed to "Shiloh Princton" at Nickels's address. Clerk's Papers (CP) at 128. The return address listed Kyle Baker, a "jail friend" of Sanchez's who was housed in the same custody unit. 1 Report of Proceedings (RP) at 104. The envelope contained a letter and some drawings. Hovda recognized the handwriting on the letter as Sanchez's because Sanchez wrote multiple complaints to Hovda during his incarceration.

Hovda also observed that the drawings were addressed to "Noah" and "Taj." 1 RP at 156. Hovda knew from listening to approximately 100 hours of Sanchez's calls at the jail that his children were named Noah and Taj.

The letter stated in relevant part, "As long as you don't cooperate, they will drop a lot of this stuff. I will still have to plea to something" and, "I've been here way too long. I need to be released now. You need to help in that by not cooperating or returning calls and not [unreadable]." 1 RP at 155.[1] Nickels identified the author as Sanchez based on the handwriting, the drawings, the content of the letter, and the way the author signed the letter as "[her] soulmate." 2 RP at 222.

The State charged Sanchez with one count of witness tampering. The information alleged that he "attempted to induce Rachel Nickels . . . a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child to testify falsely or, without right or privilege to do so, to withhold any testimony." CP at 1.

Sanchez proposed a "to convict" instruction that, as relevant here, limited the means of committing witness tampering to inducing a witness to "testify falsely or withhold testimony," the only alternative charged by the State. 2 RP at 242; CP at 89.

---

[1] Hovda read portions of the letter during the State's case: "There's a sentence, 'As long as you don't cooperate, they will drop a lot of this stuff. I will still have to plea a something, but at least it's not' and I can't read the writing on that part." And "Then 'I've been here way too long. I need to be released now. You need to help in that by not cooperating or returning calls and not'—and again, I can't read the writing." 1 RP at 155.

When the State read the same portions of the letter during closing, it added "but at least it's not ten to life-er" to the end of the first statement, and "or returning calls and not testifying" to the end of the second one. 2 RP at 270.

The court drafted its own jury instructions for the parties to review. The court asked for objections and exceptions. After the parties reviewed the instructions given by the court, Sanchez neither objected nor excepted.

The court's draft included the State's "to convict" instruction which read:

> To convict the defendant of the crime of tampering with a witness as charged, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about June 15, 2018, the defendant attempted to induce Rachel Nickels to testify falsely, or without right or privilege to do so, withhold any testimony or absent herself from any official [proceeding]; and
> (2) That Rachel Nickels was a witness or a person the defendant had reason to believe was about to be called as a witness in any official proceedings; and.
> (3) That any of these acts occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 121 (Instr. 10).

Another jury instruction stated:

> A person commits the crime of tampering with a witness when he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding to testify falsely or, without right or privilege to do so, to withhold any testimony or to absent himself or herself from any official proceedings.

CP at 118 (Instr. 7).

At trial, Sanchez primarily argued that he did not write the letter. As a result, witness testimony and closing arguments from both parties focused on that issue, rather than whether the language of the letter amounted to tampering. However, both Sanchez and the State discussed the elements of witness tampering and both mentioned absenting oneself from the proceedings in closing argument. After going through each element of the to convict instruction, the State argued that the language of the letter showed an attempt "to induce [Nickels] not to testify." It also argued

that "There is no clearer way to ask somebody not to come to court to testify than saying you need help in that by not cooperating or returning calls and not testifying." 2 RP at 298-300.

The jury found Sanchez guilty.

Relying on CrR 7.5(a), Sanchez moved for a new trial based on the jury instruction containing an uncharged alternative of committing witness tampering. The State conceded the error but argued that it was harmless. The court agreed with the State and denied the motion. Sanchez appeals.

ANALYSIS

"Except where questions of law are involved, a trial judge is invested with broad discretion in granting motions for new trial. The exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981). When a motion for a new trial is based on an alleged error of law, the trial court's decision whether to grant the motion is reviewed de novo. *State v. Mohamed*, 186 Wn.2d 235, 241, 375 P.3d 1068 (2016).

Sanchez argues that he was denied due process because the jury instructions included an uncharged alternative of committing witness tampering. The State concedes error but argues it was harmless. Sanchez argues that because the jury could have convicted him on uncharged alternative, he has shown prejudice. We accept the State's concession but agree with Sanchez that the error was not harmless.

The State is constitutionally required to inform an accused of the criminal charges he or she will face at trial, and the State cannot try an accused for an uncharged crime. U.S. CONST. amend. VI; CONST. art. I, § 22 (amend. 10); *State v. Lindsey*, 177 Wn. App. 233, 246-47, 311 P.3d 61 (2013). Instructing the jury on uncharged alternatives is a manifest error affecting a

4

constitutional right that this court will address for the first time on appeal. *State v. Laramie*, 141 Wn. App. 332, 342, 169 P.3d 859 (2007); *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003); RAP 2.5.

"When a statute sets forth alternative[s] . . . by which a crime can be committed, the charging document may charge none, one, or all of the alternatives, provided the alternatives charged are not repugnant to one another." *Chino*, 117 Wn. App. at 539 (quoting *State v. Williamson*, 84 Wn. App. 37, 42, 924 P.2d 960 (1996)). But, when the information charges only one of the alternatives, it is error to instruct the jury that it may consider other ways or means by which the crime could have been committed, regardless of the range of evidence admitted at trial. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988).

The manner of committing a crime is an element and the defendant must be informed of this element in the information in order to prepare a proper defense. *Bray*, 52 Wn. App. at 34. "One cannot be tried for an uncharged offense." *Bray*, 52 Wn. App. at 34. Therefore, an instruction containing an uncharged alternative is error. *Bray*, 52 Wn. App. at 34.

"An erroneous instruction given on behalf of the party in whose favor the verdict was returned is presumed prejudicial unless it affirmatively appears that the error was harmless." *Bray*, 52 Wn. App at 34-35.

An instructional error stemming from uncharged alternatives may be harmless when additional instructions potentially cured the error by clearly and specifically defining the charged crime. *State v. Severns*, 13 Wn.2d 542, 549, 125 P.2d 659 (1942). An error may also be harmless where no evidence was presented on alternative means. *State v. Spiers*, 119 Wn. App. 85, 89-90, 79 P.3d 30 (2003). Error may be exacerbated by the State's reference to the uncharged means during closing argument. *Severns*, 13 Wn.2d at 548-49. The error cannot be harmless when the

jury possibly convicted the accused on the basis of the uncharged alternative. *Chino*, 117 Wn. App. at 540-41.

RCW 9A.72.120(1) provides that:

A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding . . . to:
(a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
(b) Absent himself or herself from such proceedings; or
(c) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.

Both instruction 7, the definition of tampering with a witness, and instruction 10, the to-convict instruction, listed the uncharged alternative of inducing the witness to absent himself or herself from official proceedings. RCW 9A.72.120(1)(b). We accept the State's concession that the court erred by instructing the jury on an alternative not alleged in the information. The instructional error is presumed prejudicial unless it affirmatively appears the error was harmless. *Bray*, 52 Wn. App at 34-35.

First, it should be noted that the State argued in closing that the letter read, "You need to help in that by not cooperating or returning calls and not testifying." 2 RP at 270. In contrast, Hovda could not read "not testifying" at the end of the sentence. The court admitted the letter into evidence; therefore, the jury could determine if the State's reading was accurate. By reading the letter in this manner, the State injected a fact to support a finding that Sanchez induced the witness to absent herself from the trial.

There are cases where jury instructions containing an uncharged alternative constituted harmless error. In those cases, the error was harmless because the jury could not have considered or convicted under the uncharged alternative. That circumstance is not present here.

6

First, no other instruction cured the error by specifically defining the charged crime or limiting the jury's consideration to only the charged alternative. *Severns*, 13 Wn.2d at 549. Also, the evidence supported both the charged and the uncharged alternative. *Spiers*, 119 Wn. App. at 89. The letter asked Nickels to help Sanchez by "not testifying," which could mean absenting by not showing up when called, or it could mean withholding testimony by attending trial but refusing to testify. Finally, both the State and Sanchez exacerbated the error by referring to the uncharged alternative during their respective closing arguments. *Severns*, 13 Wn.2d at 549. The State told the jury "There is no clearer way to ask somebody not to come to court to testify than saying you need help in that by not cooperating or returning calls and not testifying." 2 RP at 298-300. It is possible that the jury convicted Sanchez under the "absent from official proceedings" alternative so the error was not harmless.

Nevertheless, the State argues that it affirmatively showed that any error was harmless because under the facts of this case, "absenting from an official proceeding" and "withholding testimony" amount to the same thing. Therefore, there is no possibility that the jury could have convicted Sanchez of the uncharged means without also convicting him of the charged means.

However, absenting oneself from trial is not the same as withholding testimony. A juror could have viewed Sanchez's request that Nickels help him by "not testifying" as a request to not attend trial at all, i.e. absent herself. A juror also could have viewed the language of the letter as a request that she withhold testimony even if she appeared at trial.

The court instructed the jury that it could convict Sanchez if it found that he attempted to induce Nickels to absent herself. The State accentuated the error by arguing that Sanchez attempted to induce Nickels to "not to come to court to testify." 2 RP at 299. Because Sanchez

could have been convicted under the alternative not charged in the information, the State has failed to show the error was harmless. The trial court erred in denying the motion for a new trial.

We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Sutton, A.C.J.