# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53353-7-II |
| Respondent, | |
| v. | |
| DAVID GARCIA, JR., | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—David Garcia Jr. was convicted of two counts of first degree child molestation, four counts of first degree child rape, and two counts of second degree child rape, all for sexual abuse involving his 12-year-old stepdaughter. Garcia was also convicted of two counts of witness tampering based on letters he sent to the victim and her mother.

Garcia argues the trial court erred when it administered a noncorroboration jury instruction and included uncharged alternatives in the to convict instructions for the witness tampering charges. Garcia also claims the trial court improperly responded to a jury question about witness tampering and there was insufficient evidence to sustain one of his two convictions for witness tampering. Finally, Garcia argues the trial court abused its discretion when it denied his motion for an evidentiary hearing to address alleged juror misconduct. The State concedes that the trial court erred by including uncharged alternatives in the to convict instructions for the witness tampering charges.

The noncorroboration instruction given was not an improper comment on the evidence. We accept the State's concession regarding the to convict instructions and reverse Garcia's two

convictions for witness tampering. Because we reverse these convictions, we need not reach the related jury question issue. The State presented sufficient evidence of witness tampering, so Garcia can be retried on remand. Finally, the trial court did not abuse its discretion by denying Garcia's motion for an evidentiary hearing on the issue of juror misconduct.

We reverse Garcia's witness tampering convictions and remand for further proceedings. We affirm the remainder of his convictions.

FACTS

Garcia was charged with two counts of first degree child molestation, four counts of first degree child rape, and two counts of second degree child rape after his 12-year-old stepdaughter, RG, disclosed that Garcia had sexually abused her for several years. The facts underlying these charges are not disputed on appeal.

While in jail awaiting trial, Garcia sent letters to RG and Kathy Garcia,[1] Garcia's wife and RG's mother. Kathy gave the letters to law enforcement, and the State moved to amend the information, over Garcia's objection, to add two counts of violation of a domestic violence court order and two counts of witness tampering. The trial court granted the motion with respect to the witness tampering charges only.

A.      Evidence of Witness Tampering

The amended information charged Garcia with "attempt[ing] to induce" Kathy "to testify falsely; contrary to [RCW] 9A.72.120(1)(a)." Clerk's Papers (CP) at 116-17. It also charged Garcia

---

[1] Because Kathy Garcia shares a last name with the Appellant, we refer to her by her first name for clarity.

with "attempt[ing] to induce" RG "to testify falsely; contrary to [RCW] 9A.72.120(1)(a)." CP at 117. These charges remained the same in a second amended information.

The State introduced into evidence a postcard with the message "HAPPY BIRTHDAY I LOVE YOU" written in block letters. CP at 120. The postcard was addressed to Garcia himself at the family's home address, even though he was not living there pretrial, and the return address showed the postcard was from Garcia. Kathy testified that the family received this postcard in February and RG's birthday is in February.

The State also introduced a letter addressed to "My Dearest Love Kathy" wherein Garcia discussed their romantic relationship and told Kathy, "You and I both know that when [RG] has to testify in court she will never be the same after that and it will mess with [h]er the rest of her life." CP at 123-24. Garcia also wrote, "Honey there is another way without a victim[. T]here is no case if you [d]rop the charges and tell them that [RG] won't testify [against] me they don't have a case." CP at 126. He continued, "If they try to act tough and threaten a [subpoena] tell them [RG] will testify that she was mistaken." *Id.*

B.      Jury Instructions

The State proposed a noncorroboration instruction that read: "In order to convict a person of the crime of Child Molestation in the First Degree, Rape of a Child in the First Degree, or Rape of a Child in the Second Degree as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated." CP at 194. Garcia's counsel objected to the use of the noncorroboration instruction. Alternatively, defense counsel asked that "if the Court [did] accept this jury instruction that . . . a sentence be added to the end of it that says the jury is to decide all questions of witness credibility." 4 Verbatim Report of Proceedings (VRP) at 754. The

3

trial court denied Garcia's motion and declined to add a sentence regarding witness credibility "because that specific instruction or that information is embedded . . . in Jury Instruction Number 1." 4 VRP at 756.

Consistent with this ruling, the jury was instructed, "You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness." CP at 226. They were also told that in order to convict Garcia of the charged sexual offenses, "it is not necessary that the testimony of the alleged victim be corroborated." CP at 251.

The jury instructions defined "witness tampering" as when a person "attempts to induce a witness," or a person whom they believe may be called as a witness or may have relevant information, "to testify falsely or, without right or privilege to do so, to withhold any testimony or to absent himself or herself from any official proceedings or to withhold from a law enforcement agency information . . . relevant to a criminal investigation or the abuse or neglect of a minor child." CP at 252. The to convict instructions for the two witness tampering charges similarly stated that the jury had to find Garcia "attempted to induce" Kathy and RG "to testify falsely or, without right or privilege to do so, withhold any testimony or absent herself from any official proceeding or withhold from a law enforcement agency information which she had relevant to a criminal investigation or the abuse or neglect of a minor child." CP at 253-54. Garcia's counsel did not object to these witness tampering instructions.

C.      Closing Argument & Deliberations

In closing argument, the State told the jury that in order to prove the witness tampering charges, the State had to prove "that the defendant attempted to induce Kathy and [RG] to either

4

testify falsely, withhold testimony, absent herself or withhold information." 4 VRP at 800. Applying this law to the facts of the case, the State explained, "[Garcia] attempted to induce Kathy to withhold the testimony of her daughter. Don't even bring her into court. He attempted to tell her to testify falsely by dropping the charges or withholding information." *Id.* The State continued, "[H]e attempted to do that with [RG] by way of her mom because if [her mom][2] couldn't bring her, she can't be here to tell the truth." *Id.*

During its deliberations, the jury asked the trial court, "Does witness tampering require a direct attempt to communicate with the witness?" CP at 223. Garcia's counsel requested that the trial court answer by referring the jury to the instructions it already had. The trial court relied on *State v. Williamson*, 131 Wn. App. 1, 86 P.3d 1221 (2004), and instead answered no.

The jury found Garcia guilty of all counts charged, and it determined that the sexual abuse was "part of an ongoing pattern" and that Garcia used "a position of trust or confidence to facilitate" commission of the sexual offenses. CP 262-79.

D.     Allegations of Juror Misconduct

One week after the trial, a juror called the trial court and shared "[c]oncerns regarding discussions during 'non-formal' deliberation time (while [jurors] were eating lunch and people were getting up to use the restroom)." CP at 283. The prosecutor, defense counsel, and defense investigator conducted a recorded interview with this juror.

---

[2] The transcript reads, "[H]e attempted to do that with R.G. by way of her mom because if *R.G.* couldn't bring her, she can't be here to tell the truth." 4 VRP at 800 (emphasis added). This was likely a slip of the tongue. In context, it is clear the State was arguing that Garcia attempted to keep RG's mother from bringing RG to court to testify.

The juror expressed concern that she thought two other members of the jury may have been discussing Kathy during the jury's lunch break on the day of its deliberations. The reporting juror heard approximately "[t]wo seconds" of conversation as she passed by to go to the restroom. CP at 338. She stated, "I believe, I'm guessing, I'm thinking [they were talking] about the mom." CP at 314. Soon after, this juror voiced her opposition to discussing the case at all while "there's people going in and out of the restroom" to the foreman. CP at 315. She recalled that by this time, she thought the jury "had finished the majority of the deliberations" and they were just waiting for the judge to respond to a question regarding the witness tampering charges. *Id.*

The juror also reported that a similar incident occurred during an earlier lunch break, prior to the close of the case. She believed two jurors may have been discussing Kathy, although she was not sure whether it was the same two jurors as in the later incident. During her interview with the prosecutor, defense counsel, and defense investigator, she stated, "I believe [their conversation] was about the mom," and "That was the impression I got," but she could not recall anything specific that the other two jurors said. CP at 319, 330. She promptly reported this incident to a court staff member who advised her to "'let it go.'" CP at 319.

The juror shared, "none of this I believe in my heart [a]ffected the trial." CP at 334. She explained that "whatever those two things I heard if they were indeed about the mom were just consistent with what other people were saying about the mom in deliberations. But again, I think we all realized she was not on [trial]." CP at 340-41.

Based on this information, Garcia moved for a new trial pursuant to CrR 7.5(a), citing Garcia's right to a fair jury trial under the Sixth Amendment to the United States Constitution and article I, section 21 of the Washington Constitution. Garcia also moved for an evidentiary hearing

on the issue, arguing that this juror should be questioned under oath and asked to name the other jurors suspected of misconduct so that those jurors could be questioned. The State disputed that Garcia's right to a fair trial was impacted and argued that even if the allegations were true, Garcia was not prejudiced.

In a hearing on Garcia's motion for a new trial, the trial court recited the standard from CrR 7.5(a) requiring that it "affirmatively appear[] that a substantial right of [the] defendant was materially affected" in order for a new trial to be granted. 5 VRP at 863. The trial court recognized that the burden is on the moving party and considered "all the facts and circumstances of the trial" to assess whether the defendant was prejudiced. 5 VRP at 866. The trial court then ruled, "[A]pplying both the rule in 7.5 and the case law . . . the Court's finding is that [the reporting juror] simply is not confident about what she heard. . . . [A]nd speculation simply is not sufficient to establish [misconduct]." 5 VRP at 866-67. The trial court elaborated on its ruling, explaining, "I don't think there's sufficient evidence necessarily to find that these events occurred. But even if I find the events occurred as [the juror] described them, I don't find that the defendant was prejudiced by this alleged misconduct." 5 VRP at 867.

The trial court reiterated the juror's statement that she believed any misconduct did not affect the jury's deliberations, and the court explained that "generally we're not to . . . look at the deliberations." *Id.* The trial court then stated that "it was clear to the court the jury found the State's witnesses were credible and that the defense theory of the case ultimately was unpersuasive." *Id.* The trial court denied the motion for a new trial without holding an evidentiary hearing.

The trial court imposed an exceptional sentence of 360 months. Garcia appeals his convictions.

ANALYSIS

I. NONCORROBORATION INSTRUCTION

Garcia contends the noncorroboration instruction given here was an unconstitutional comment on the evidence because it did not include language specifying that the jury must determine witness credibility. We disagree.

Article IV, section 16 of the Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Jury instructions are reviewed de novo, "within the context of the jury instructions as a whole." *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

Washington law states that "[i]n order to convict a person of any [sex offense defined in chapter 9A.44 RCW] it shall not be necessary that the testimony of the alleged victim be corroborated." RCW 9A.44.020(1). In *State v. Clayton*, the jury was instructed:

> "You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, *the question is distinctly one for the jury*, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, *notwithstanding that there be no direct corroboration of her testimony* as to the commission of the act."

32 Wn.2d 571, 572, 202 P.2d 922 (1949) (emphasis added). The Washington Supreme Court held this was not a comment on the evidence because the jury was not instructed that the victim's testimony was "sufficient to convict" the defendant; rather, they were instructed that "a defendant *may be* convicted upon such testimony alone," which is a legally correct statement. *Id.* at 574. The defendant argued the instruction should have stated that a decision on guilt or innocence must be based on all of the evidence and circumstances at trial. *Id.* at 577. But the Supreme Court concluded

that the jury "must have understood, from the second sentence of the instruction," as well as other express instructions it received, that it was to consider all of the evidence. *Id.*

This court has since upheld various iterations of the noncorroboration instruction. In *State v. Zimmerman*, 130 Wn. App. 170, 173-74, 121 P.3d 1216 (2005), we upheld an instruction that "'[i]n order to convict a person of the crime of child molestation as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated.'" We explained that we were bound by *Clayton* to hold the noncorroboration instruction constitutional, although we noted our "misgivings." *Id.* at 182.

Then, in *State v. Johnson*, 152 Wn. App. 924, 935, 219 P.3d 958 (2009), we upheld a similar instruction that "'[i]n order to convict a person of a sexual offense against a child, it shall not be necessary that the testimony of the alleged victim be corroborated.'"[3] In *Johnson*, the defendant pointed out additional language from the instruction in *Clayton* that stated credibility determinations are for the jury and argued that this additional language was necessary for the instruction to be constitutional. *Id.* at 936.

We advised that "trial courts *should consider* instructing the jury that it is to decide all questions of witness credibility as part of the [noncorroboration] instruction" because otherwise the instruction "*may be* an impermissible comment on the alleged victim's credibility." *Id.* at 936-37 (emphasis added). But because there was "no clear pronouncement from our Supreme Court on whether the additional language is necessary," we held that the instruction given was a correct statement of the law. *Id.* at 936.

---

[3] Johnson's conviction was reversed on other grounds, but we reached this issue because it could recur upon remand. *Johnson*, 152 Wn. App. at 934.

Here, the jury was instructed that in order to convict Garcia of the charged sexual offenses, "it is not necessary that the testimony of the alleged victim be corroborated." CP at 251. This noncorroboration instruction is similar to the instructions we held permissible in *Zimmerman* and *Johnson*.

Although the *Johnson* court advised that trial courts "should consider" including language stating that the jury must decide all questions of witness credibility within the noncorroboration instruction, it nevertheless held that the instruction was consistent with the law without the additional language. 152 Wn. App. at 936. There is still "no clear pronouncement from our Supreme Court" on this issue, *id.*, so we follow *Johnson* and hold that the noncorroboration instruction is permissible even without the additional language.

Moreover, we review jury instructions "as a whole." *Levy*, 156 Wn.2d at 721. The trial court here separately instructed the jury that they were "the sole judges of the credibility of each witness" and "the sole judges of the value or weight to be given to the testimony of each witness." CP at 226. The jury was adequately instructed on its duty to evaluate the credibility of each witness.

We hold that the noncorroboration instruction given here was consistent with the law and not an impermissible comment on the evidence. Further, the jury was adequately instructed on its duty to evaluate the credibility of each witness.

II. WITNESS TAMPERING

A.     To Convict Instructions for Witness Tampering

Garcia next argues that the trial court erred by instructing the jury on alternative means of witness tampering in the to convict instructions because the State only charged Garcia with one means. He claims the prejudice this caused was exacerbated when the trial court repeated the

10

alternative means in the instruction defining the offense and the State argued the alternative means in its closing argument. The State concedes that the to convict instructions for witness tampering were erroneous. We agree with Garcia and accept the State's concession.

"The State is constitutionally required to inform an accused of the criminal charges he or she will face at trial, and the State cannot try an accused for an uncharged crime." *State v. Sanchez*, 14 Wn. App. 2d 261, 267, 471 P.3d 910 (2020) (citing U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. 10)). A jury instruction including an uncharged alternative means is reviewable for the first time on appeal as a manifest error affecting a constitutional right. *Id.* We review de novo whether a jury instruction accurately states the law and does not mislead the jury. *State v. Chino*, 117 Wn. App. 531, 538, 72 P.3d 256 (2003).

In *Chino*, the defendant was charged with intimidating a witness in violation of RCW 9A.72.110(1)(d). *Id.* at 533. The witness intimidation statute, RCW 9A.72.110(1), lists four alternative means of intimidating a current or prospective witness, and Chino was charged specifically with attempting to induce a witness not to report information to law enforcement, not to have an offense prosecuted, or not to give truthful and complete information in violation of subsection (d). *Id.* at 539-40. The jury was instructed on only part of subsection (d), and it was also instructed on the alternative means defined in subsection (c), inducing a witness to absent themselves from the proceedings. *Id.* at 540. Division Three held that "[w]here the information alleges solely one statutory alternative means of committing a crime, it is error for the trial court to instruct the jury on uncharged alternatives." *Id.*; *see also State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988) ("One cannot be tried for an uncharged offense.").

Where the error favors the prevailing party, "it is presumed prejudicial unless it affirmatively appears the error was harmless." *Chino*, 117 Wn. App. at 540. An error may be harmless if the charged crime is "clearly and specifically" defined in another instruction, *id.*, or if the jury is instructed "in a manner that leaves only the charged alternative before the jury," *State v. Morales*, 174 Wn. App. 370, 382, 298 P.3d 791 (2013). But where no instruction properly defines the charged crime, it "remains possible" that the jury could have convicted based on an uncharged means, and the error cannot be harmless. *Chino*, 117 Wn. App. at 540.

Like the witness intimidation statute at issue in *Chino*, the witness tampering statute at issue here lists multiple alternative means of committing the offense. *See* RCW 9A.72.120(1)(a)-(c). Subsection (a) encompasses attempts to induce a witness to "[t]estify falsely or, without right or privilege to do so, to withhold any testimony." RCW 9A.72.120(1)(a). Here, the amended information and the second amended information specifically charged Garcia with two counts of attempting to induce a witness "to testify falsely" in violation of RCW 9A.72.120(1)(a). CP at 116-17. But the to convict instructions included additional alternative means of committing witness tampering—attempting to induce Kathy and RG to "withhold any testimony or absent herself from any official proceeding or withhold from a law enforcement agency information which she had relevant to a criminal investigation or the abuse or neglect of a minor child." CP at 253-54. Because the information alleged only one means of committing the offense, the trial court erred by instructing the jury on the other uncharged alternatives.

Further, no separate instruction "clearly and specifically" defined the exact crime that the State charged. *Chino*, 117 Wn. App. at 540. The instruction defining "witness tampering" also included uncharged alternatives. And the prosecutor argued uncharged alternatives during her

12

closing argument. She claimed that Garcia "attempted to induce Kathy to withhold the testimony of her daughter" by not bringing her to court, "attempted to tell [Kathy] to testify falsely by dropping the charges or withholding information," and "attempted to do that with [RG] by way of her mom because if [her mom] couldn't bring her, she can't be here to tell the truth." 4 VRP at 800. Garcia was not charged with attempting to induce a witness to withhold testimony or with attempting to induce a witness to absent themselves from a proceeding. It "remains possible" that the jury could have convicted Garcia based on an uncharged means, so this error is not harmless. *Chino*, 117 Wn. App. at 540.

We accept the State's concession and reverse Garcia's two convictions for witness tampering.[4]

B.      Sufficiency of the Evidence

Garcia also argues that there was insufficient evidence to support his conviction for witness tampering with respect to RG because the letter he wrote to Kathy "does not contain any communication directed towards [RG] and there is no evidence in the record that [Kathy] showed the letter to [RG]." Br. of Appellant at 30. If the evidence were insufficient to support the conviction for witness tampering related to RG, then Garcia could not be retried on this charge. *See State v. Crediford*, 130 Wn.2d 747, 761, 927 P.2d 1129 (1996). But we disagree with Garcia and hold that the evidence was sufficient, permitting retrial.

---

[4] During deliberations, the jury asked, "Does witness tampering require a direct attempt to communicate with the witness?" CP at 223. Garcia argues that when the trial court responded to the jury's question by answering no, it impermissibly commented on the evidence and relieved the State of its burden of proof. Because we reverse Garcia's witness tampering convictions, we need not reach this issue.

When reviewing a claim of insufficient evidence, we ask "'whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.'" *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015) (quoting *State v. McKague*, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011)). We accept the State's evidence as true and draw all reasonable inferences from the evidence in the light most favorable to the State. *Id.* Both circumstantial and direct evidence are considered equally reliable. *Id.*

We review the sufficiency of the evidence "'to guarantee the fundamental protection of due process of law.'" *State v. Kirwin*, 166 Wn. App. 659, 672, 271 P.3d 310 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The due process clause of the United States Constitution and article I, section 22 of the Washington Constitution require that the sufficiency of the evidence be tested with respect to the charged offense, "of which the defendant was given notice and the opportunity to defend." *Id.* at 673. Here, Garcia was charged with attempting to induce RG to testify falsely in violation of RCW 9A.72.120(1)(a). We therefore review the sufficiency of the evidence to sustain a conviction for that charge.

In *Williamson*, the defendant was charged with witness tampering after he asked a third party to tell the child victim "that her mother and father would go to jail if she did not take back her statement." 131 Wn. App. at 4. The third party never actually contacted the victim. *Id.* On appeal, this court upheld the defendant's conviction and held that the witness tampering statute does not require "actual contact" with the targeted witness. *Id.* at 6. We explained that "[a] person tampers with a witness if he *attempts* to alter the witness's testimony," and the defendant "completed his attempt . . . when he asked [a third party] to talk with [the victim] about changing her testimony." *Id.*

14

The facts here are distinct from the facts in *Williamson* in one respect. Garcia did not explicitly ask Kathy to pass along a message to RG. Instead, Garcia insisted that Kathy should "tell *them* that [RG] won't testify" or "tell *them* [RG] will testify that she was mistaken," presumably referring to law enforcement. CP at 126 (emphasis added). Although the specific language in the letter asked Kathy *to tell law enforcement* that RG was mistaken, a reasonable juror could infer from this that Garcia intended for Kathy to convince RG to change her anticipated testimony. "A person tampers with a witness if he *attempts* to alter the witness's testimony." *Williamson*, 131 Wn. App. at 6. Asking Kathy to prevent RG from testifying consistent with her previous statements was an attempt at altering RG's testimony. "[A]n actual contact" with RG— by either Garcia or Kathy—is not necessary under *Williamson*. *Id.*

Viewing all of the evidence in the light most favorable to the State, there was sufficient evidence presented at trial to sustain the conviction for witness tampering related to RG as charged.

### III. JUROR MISCONDUCT

Finally, Garcia argues that the trial court abused its discretion when it denied his motion for an evidentiary hearing on possible juror misconduct. We disagree.

"We review a trial court's investigation of juror misconduct for abuse of discretion," which occurs when the trial court "acts on untenable grounds or its ruling is manifestly unreasonable." *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

The burden is on the moving party to show alleged juror misconduct. *State v. Hawkins*, 72 Wn.2d 565, 568, 434 P.2d 584 (1967). The trial court has discretion to decide whether an evidentiary hearing is necessary. *State v. Berhe*, 193 Wn.2d 647, 657, 444 P.3d 1172 (2019); *see also State v. Earl*, 142 Wn. App. 768, 774-76, 177 P.3d 132 (2008) (holding that the trial court may limit the scope of its inquiry where the moving party does not satisfy its burden of proving juror misconduct or prejudice).

Here, the trial court found that the juror who reported possible misconduct "simply [was] not confident about what she heard," and it concluded that "speculation simply is not sufficient." 5 VRP at 866. The trial court considered the transcript of the juror's interview and explained, "I don't think there's sufficient evidence necessarily to find that these events occurred." 5 VRP at 867.

We see no reason for any inquiry into potential juror misconduct beyond what occurred here. In light of the fact that the interviewed juror was unsure about the very brief portions of the conversations that she overheard—and unsure even about which jurors were involved, and given the broad discretion afforded trial courts to determine the extent of an investigation of juror misconduct, we conclude there was no abuse of discretion here.

We hold that the trial court did not abuse its discretion by denying Garcia's motion for an evidentiary hearing on the alleged juror misconduct.

CONCLUSION

We reverse Garcia's two convictions for witness tampering and remand for further proceedings. We affirm the remainder of Garcia's convictions.

16

No. 53353-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Lee, C.J.

_____
Worswick, J.